CITY OF CADILLAC v. WOONSOCKET INST. FOR SAVINGS.

(Circuit Court of Appeals, Sixth Circuit. November 20, 1893.)

No. 104.

1. MUNICIPAL BONDS—VALIDITY—NEGOTIABILITY.
    Statutory power to issue "bonds" for loans lawfully made (How. Ann. St. Mich. § 2717) includes power to make the bonds negotiable. Brenham v. Bank, 12 Sup. Ct. 559, 144 U. S. 173, distinguished.

2. SAME—STATUTORY REQUISITES—RECITALS.
    Bonds purporting to be "refunding bonds" issued to take up former bonds "falling due" sufficiently comply with the Michigan statute requiring each municipal bond to show upon its face "the class of indebtedness to which it belongs, and from what fund it is payable." How. Ann. St. § 2717; Barnett v. Denison, 12 Sup. Ct. 819, 145 U. S. 135, distinguished.

3. SAME—ESTOPPEL—RECITALS—BONA FIDE HOLDERS.
    Recitals in bonds issued by a city council under statutory authority, that they are "refunding" bonds, issued to take up "old bonds falling due," estop the city from showing, as against bona fide holders, that the old bonds were invalid, and therefore insufficient to support the issuance of the new ones.

In Error to the Circuit Court of the United States for the Southern Division of the Western District of Michigan.

At Law. Action by the Woonsocket Institution for Savings against the city of Cadillac to recover on certain municipal bonds. Judgment for plaintiff. Defendant brings error. Affirmed.

D. E. McIntyre, (F. A. Baker, of counsel,) for plaintiff in error.

John W. Beaumont, (W. H. Rossington, of counsel,) for defendant in error.

Before BROWN, Circuit Justice, and TAFT and LURTON, Circuit Judges.

LURTON, Circuit Judge.   This is a suit at law, brought by the appellee, a Rhode Island banking corporation, against the city of Cadillac, a municipal corporation of the state of Michigan, to recover upon certain bonds issued by that city.   A jury was waived, and the circuit court, upon the facts, rendered a verdict for the plaintiff. · The bonds involved are part of a series issued in place of other bonds about to mature.   The bonds refunded were issued under and in pursuance of an act of the Michigan legislature passed March 2, 1885, and entitled "An act to authorize the city of Cadillac, in the county of Wexford, to borrow money to make public improvements." The first section of that act was in these words:

"Section 1. The people of the state of Michigan enact, that the common council of the city of Cadillac, in the county of Wexford, shall be, and is hereby authorized and empowered to borrow money on the faith and credit of said city, and issue bonds therefor to an amount not exceeding thirty-five thousand dollars, which shall be expended in making public improvements in said city of Cadillac, provided, that a majority of the qualified electors of said city, voting at an election to be called in compliance with the provisions of act number one hundred and seventy-eight of the session laws of eighteen hundred and seventy-three, shall vote in favor of such loan in the manner specified in such act, and not otherwise."

The bonds issued under that act were misapplied. They were used in the aid of the extension of a railroad.   This, under the law of Michigan, was not a public improvement.   People v. Salem, 20 Mich. 452; Bay City v. State Treasurer, 23 Mich. 499.   At the time these bonds were refunded, they were in the hands of one James M. Ashley, Jr., who had received them from the city with full notice of their misapplication.   In his hands they were void under the law of Michigan, as settled in cases cited above.   The evidence, however, shows that the taxpayers of Cadillac did not wish to repudiate their obligations.   They had received a substantial benefit by the performance of the contract in consideration of which they had been issued to Ashley.   In this situation, the people of Cadillac, with great unanimity, petitioned their council to refund these bonds, which were about to fall due.   The council, thus moved, passed an ordinance, authorizing new bonds to issue "in place of and to extend the time of payment of former bonds of the city."   The bonds thus authorized, a part of which are now sued upon, were in words and figures as follows:

### City of Cadillac.   Refunding Bond.

"Know all men by these presents, that the city of Cadillac, in Wexford county, state of Michigan, is indebted to and promises to pay the bearer the sum

of one thousand dollars in lawful money of the United States of America, at the National Bank of Deposit in the city of New York, on the first day of April, A. D. 18—, with interest thereon at the rate of six per cent. per annum, payable semiannually on the first day of April and October of each year, upon the presentation and delivery of the proper coupon hereunto annexed, signed by the clerk of said city, at the said National Bank of Deposit in the city of New York, for the payment of which sum and interest the said city of Cadillac is hereby held and firmly bound, and its faith and credit are hereby pledged. This bond is one of a series of thirty bonds of like date and tenor, amounting in the aggregate to thirty thousand dollars, issued under and in pursuance of the provisions of the general laws of the state of Michigan as found in chapter 80 of title 16 of Howell's Annotated Statutes, for the purpose of extending the time of payment of bonds formerly issued by said city. Also by virtue of, and in accordance with, an ordinance duly passed by the council of said city, and approved by the mayor thereof on the ninth day of May, A. D. 1888, entitled 'An ordinance authorizing new bonds of the city of Cadillac to be issued in place of, and to extend the time of payment of, former bonds of said city, falling due.' And it is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in the issuing of said bonds have been properly done, happened, and performed in regular and due form, as required by law. In testimony whereof, we, the undersigned officers of the city of Cadillac, being duly authorized to execute this obligation on behalf of said city, have hereunto set our signatures officially, and caused the corporate seal of said city to be hereunto affixed, this first day of April, A. D. 1888.

[Seal]
          "Wellington W. Cummer,
          "Mayor of City of Cadillac.
          "Ernest M. Hutchinson,
             "City Clerk."

To each of said bonds were annexed the proper interest coupons. And the said bonds were duly numbered in the series, and the year when payable duly inserted in each.

1. The first defense interposed is that the city of Cadillac had no power to issue negotiable bonds, and that the holder of these bonds is not, therefore, protected against any defense which the city can make. The city of Cadillac, by the act incorporating it, was subject to all the provisions of the general act for the incorporation of cities; being Act No. 178, of the Public Acts of 1873, and being chapter 80 of Howell's Annotated Statutes of the state of Michigan. Section 2717 of the latter compilation is as follows:

"No loans shall be made by the council or by its authority in any year exceeding the amount prescribed in this act. For any loans lawfully made the bonds of the city may be issued, bearing a legal rate of interest. A record, showing the dates, numbers and amounts of all bonds issued, and when due shall be kept by the city clerk or comptroller. When deemed necessary by the council to extend the time of payment, new bonds may be issued in the place of former bonds falling due, in such manner as merely to change but not increase the indebtedness of the city. Each bond shall show upon its face the class of indebtedness to which it belongs and from what fund it is payable."

This act clearly authorizes the issuance of "bonds" bearing a legal rate of interest for any loans lawfully made. It also empowers the council to issue "new bonds," to extend the time of payment of "bonds falling due." That this contemplates, and by necessary implication authorizes, the issue of negotiable bonds, we have no doubt. The general power to issue "bonds" must be taken to authorize "bonds" in the usual form of such well-known commercial obliga-

tions. That usual form embodies a contract and obligation negotiable in its terms. The case of Brenham v. Bank, 144 U. S. 173, 12 Sup. Ct. 559, has no bearing upon this question. Nothing more is there decided than that an act empowering a city to "borrow for general purposes not exceeding $15,000 on the credit of the city," did not authorize the issuance of negotiable obligations for the money so borrowed. Here the power to issue obligations, by necessary implication, in the usual commercial form of "bonds," is expressly given. But one meaning can be fairly deduced from the terms of the act. The question now presented was not discussed in the Brenham Case, and we have no doubt whatever as to the conclusion we have announced.

2. It is next insisted that, if the city had power to issue negotiable bonds, they do not on their face show compliance with the requirements of section 2717, in that they do not upon their "face show the class of indebtedness to which it belongs, and from what fund it is payable." The contention is that any defect in these particulars puts the purchaser upon his guard, and, if it shall turn out that the bonds were unauthorized and illegal, that the purchaser takes subject to all defenses, upon the principle decided in Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. 819.

These bonds upon their face purport to be "refunding bonds." The express representation on the face of the bonds is that they were not original obligations, but bonds issued to take up and extend the time of payment of former bonds "falling due." By section 2717 (How. Mich. St.) the city had the power to issue "new bonds," in place of former "bonds falling due." Does section 2717, above set out, require that a refunding bond shall show the class of indebtedness to which the original bond belonged? Bonds of many kinds might mature at the same time. Was it the purpose of this statute to trace each separate old bond into a new and distinct refunding bond? There might be grave difficulties in preserving such identity. To get at the meaning of this provision, we must look to certain other sections of the same chapter. Sections 2695 and 2701 bear upon the construction of section 2717. These sections are in these words:

"Section 2695, (section 3, c. 26.) The revenues raised by general tax upon all the property in the city, or by loan to be repaid by such tax, shall be divided into the following general funds: First. Contingent Fund: To defray the contingent and other expenses of the city, for the payment of which from some other fund no provision is made. Second. Fire Department Fund: To defray the expenses of purchasing grounds, erecting engine houses thereon, purchasing engines and other fire apparatus, and all other expenses necessary to maintain the fire department of the city. Third. General Street Fund: To defray the expenses of opening, widening, extending, altering and vacating streets, alleys and public grounds, and for grading, paving, curbing, graveling and otherwise improving, repairing and cleaning the streets, alleys and public grounds of the city, and for the construction and repair of sidewalks and crosswalks, and for the care thereof. Fourth. General Sewer Fund: To defray the expenses of sewers, drains, ditches and drainage, and the improvement of water courses. Fifth. Bridge Fund: For the construction and maintenance of bridges. Sixth. Water Fund: For constructing reservoirs and cisterns, and providing other supplies of water. Seventh. Public Building Fund: For providing for public buildings and for the purchase of

land therefor, and for the erection and preservation and repair of any such public buildings, city hall, offices, prisons, watchhouses and hospitals as the council is authorized to erect and maintain, and not herein otherwise provided for. Eight. Police Fund: For the maintenance of the police of the city, and to defray the expenses of the arrest and punishment of those violating the ordinances of the city. Ninth. Cemetery Fund. Tenth. Interest and Sinking Fund: For the payment of the public debt of the city and the interest thereon. Eleventh. Such other general funds as the council may from time to time constitute."

"Section 2701, (section 9, c. 26.) The council may also raise such further sum annually, not exceeding three mills on the dollar of the assessed valuation of the property in the city, as may be necessary to provide an interest and sinking fund to pay the funded debts of the city and the interest thereon."

The refunded debt of the city, being new bonds issued to take up old ones, would constitute a "class of indebtedness." "This designation," as stated by the learned trial judge, "would show ex vi termini also that they are payable out of the sinking fund." The class of indebtedness does sufficiently appear. The bond is not an original bond, but a refunded bond, and its payment is referred to the sinking fund. One with the bond and the act would not have the slightest doubt as to the class of debt or the fund for its payment. The case of Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. 819, is not applicable. The act conferring authority to issue the bonds in question, in that case required that the bonds should show the purpose for which they were issued. This was held a reasonable requirement, and that the purchaser was bound to take notice of this requirement of the law. If the purpose stated was an unauthorized one, it gave him notice; if none was stated, "then the purchaser took the risk of their being issued for an unauthorized purpose." Here there has been a substantial compliance, whether the requirement be regarded as mandatory or directory. The act should not be construed as requiring refunded bonds to show more than that they are refunded bonds. The primary purpose of the requirement is such identification of the debt as will designate the fund out of which it is payable, having reference to the funds established by section 2695. In the Barnett Case the object in requiring the purpose for which the bond was issued to appear on the face of the bond, was to apprise the purchaser of the purpose, that he might inquire as to the lawfulness of the issue for that purpose. Under the act we are construing, "the requirement," as observed by the circuit court, "touches only the incidents of liquidation." The statement on the bond that it is a refunding bond,—a bond issued to take up bonds falling due,—sufficiently answers the requirement of the statute.

3. It seems to us that the representations made on the face of the bonds estops the city, as against a bona fide holder, from disputing the fact that these bonds were issued to take up old bonds falling due. Power was conferred by the act upon the common council to issue new bonds to take up bonds falling due. The question as to whether there were any such bonds is referred to the council. The old bonds, on the facts found by the circuit court, were at the least "colorable obligations." The council determined to issue new bonds, and take them up. It seems to us that upon these circumstances it did not devolve upon the purchaser of the new bond to

look into the validity of the funded old bonds. He might well rely upon the representation made to him on the face of the bond, as to the existence of "old bonds falling due."

This case comes under the class of cases of which Town of Coloma v. Eaves, 92 U. S. 484; Hackett v. Ottawa, 99 U. S. 86; and Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216,—are examples. The observation of Mr. Justice Campbell in Zabriskie v. Railroad Co., 23 How. 381, and repeated by Mr. Justice Clifford in Bissell v. City of Jeffersonville, 24 How. 287, is applicable here. It is this:

"A corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind, and cannot, by their representations or silence, involve others in onerous engagements, and thus defeat the calculations and claims their own conduct had superinduced."

The recitals in the new bonds, as to the fact of "old bonds falling due," and that the new bonds were issued to take up the old, would well lull an intending purchaser into security. The defense it might have made against the old bonds it elected not to make. It should not now be permitted to set up as against a bona fide holder of its refunding bonds.

The judgment must be affirmed.