WEST PLAINS TP., MEADE COUNTY, v. SAGE et al.

(Circuit Court of Appeals, Eighth Circuit. September 16, 1895.)

No. 531.

1. MUNICIPAL BONDS—FRAUDULENT ISSUES—ESTOPPEL.
  A statute of Kansas (Laws 1879, c. 50) provides that every county, city, township, etc., may compromise and refund its indebtedness and issue new bonds, with interest coupons, in payment for the sum so compromised, the bonds to be signed and to contain certain recitals provided in the act, and to be issued by the proper officers to the holders of the indebtedness, and a record to be kept by the county clerks of the bonds issued in the several counties, showing the date, number, and amount, and to whom and on what account issued. Certain bonds were issued by the township of W., which purported to be issued under this act, and contained recitals that all its requirements had been complied with. The records of the governing board of the township showed that all the proper steps had been regularly taken, and that the bonds were issued to refund certain scrip held by one G., and were delivered to him. In fact, the bonds were issued to the owners of a sugar factory, to induce them to locate it in the township, and the scrip held by G. was issued to him, without consideration, to create an apparent debt to be refunded. A proposal by the owners of the factory to locate it in the township, in consideration of the bonds, and an agreement reciting the delivery of the bonds were copied into the record book of the governing board of the township, but formed no part of the records of the meetings at which the bonds were authorized, and were not mentioned or referred to in those records. *Held*, that as against a bona fide purchaser of the bonds, without notice of the falsity of the record and the recitals in the bonds, and of the illegal purpose for which they were in fact issued, the township was estopped to deny that the bonds were issued to refund its indebtedness. Per Sanborn and Thayer, Circuit Judges. Caldwell, Circuit Judge, dissenting.

2. BONA FIDE PURCHASER—NOTICE.
  *Held*, further, that the existence, in the record book of the township board, of the copies of the offer and agreement of the sugar company, outside the records of the meetings at which the bonds were authorized, did not charge the purchasers of the bonds with notice of their illegal character. Per Sanborn and Thayer, Circuit Judges. Caldwell, Circuit Judge, dissenting.

3. MUNICIPAL CORPORATIONS—NEGOTIABLE BONDS—KANSAS STATUTE.
  *Held*, further, that, under the statute aforesaid, the township was not restricted to issuing bonds payable to the holder of the indebtedness to be refunded, but might issue negotiable bonds. Per Sanborn and Thayer, Circuit Judges. Caldwell, Circuit Judge, dissenting.

4. CONSTITUTION OF KANSAS—TITLE OF STATUTE.
  *Held*, further, that the act authorizing the issue of the bonds, which was entitled "An act to enable counties, municipal corporations, boards of education of any city and school districts, to refund their indebtedness," did not violate section 16, art. 2, of the constitution of Kansas, providing that no bill shall contain more than one subject, which shall be clearly expressed in its title, though it authorized "municipal townships," which are quasi municipal corporations, to refund their indebtedness. Per Sanborn and Thayer, Circuit Judges. Caldwell, Circuit Judge, dissenting.

5. MUNICIPAL CORPORATIONS—NEGOTIABLE BONDS—KANSAS STATUTE.
  The Kansas statute of March 10, 1879 (Laws 1879, c. 50), authorizing counties, etc., to issue new bonds to refund their indebtedness, does not

authorize the issue of negotiable bonds, but only bonds payable to the individual holders of such indebtedness. Per Caldwell, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Kansas.

The township of West Plains, in the county of Meade, state of Kansas, the plaintiff in error, brings this writ of error to reverse a judgment rendered against it, and in favor of Henry W. Sage and others, defendants in error, upon certain coupons cut from refunding bonds issued by it under the provisions of chapter 50 of the Laws of Kansas of 1879. The case was tried by the court upon an agreed statement of facts. The bonds were payable to bearer, were in the usual form of such securities, and were duly executed by the proper officers of the township. Each bond contained the following recitals: "This bond is one of a series of fifteen bonds of one thousand dollars each, and issued by virtue of and in accordance with the provisions of sections one, two, and three of chapter fifty of the Laws of 1879; being an act of the legislature of the state of Kansas entitled 'An act to enable counties, municipal corporations, the board of education of any city and school districts to refund their indebtedness,' which said act took effect March 10, 1879. And it is certified and recited that all acts, conditions, and things required to be done precedent to and in the issuing of said bonds have been done, happened, and performed in regular and due form, as required by law." The defendants in error were bona fide purchasers of the bonds and coupons before maturity, without notice of any irregularity in their issue, except such as they were lawfully charged with from the public records, the law and the face of the bonds themselves.

The provisions of chapter 50 of the Laws of Kansas of 1879 that are material to the issues in this case are:

"Section 1. That every county, every city of the first, second or third class, the board of education of any city, every township, and every school district, is hereby authorized and empowered to compromise and refund its matured and maturing indebtedness of every kind and description whatsoever, upon such terms as can be agreed upon, and to issue new bonds, with semi-annual interest coupons attached, in payment for any sum so compromised; which bonds shall be issued at not less than par, shall not be for a longer period than thirty years, shall not exceed in amount the actual amount of outstanding indebtedness, and shall not draw a greater interest than six per cent. per annum.

"Sec. 2. * * * Bonds issued by any township shall be signed by the trustee, attested by the township clerk, and countersigned by the township treasurer. * * * Such bonds may be in any denominations, from one hundred to one thousand dollars, and made payable at such place as may be designated upon the face thereof, and they shall contain a recital that they are issued under this act.

"Sec. 3. When a compromise has been agreed upon, it shall be the duty of the proper officers to issue such bonds at the rate agreed upon to holder of such indebtedness in the manner prescribed in this act. * * *

"Sec. 4. A record shall be kept by the different county clerks of all bonds issued in such counties under this act, showing the date, number, amount thereof, to whom and on what account issued, and when the same become due."

The governing board of the plaintiff in error was the township board, which consisted of the trustee, clerk, and treasurer. On October 23, 1889, that board held a special meeting, and made a record of its proceedings. That record recites that all the members of the board were present; that W. C. Gould appeared at the meeting, "he being the owner of $15,000 of outstanding scrip of said township of West Plains," and offered to surrender the "scrip" for cancellation, and to receive an 'equal amount of "bonds to be issued in accordance with the laws of the state of Kansas, authorizing the refunding of outstanding indebtedness"; that the township board "decided that it is for the best interests of the township of West Plains that the proposition be

accepted, and a special election is hereby ordered," at a proper time and place, for the purpose of submitting the proposition to the electors of the township, "all for the purpose of refunding the outstanding indebtedness of said township, as provided by * * * sections 1, 2, and 3" of chapter 50, supra; that the form of ballot to be used at the election should be, "For the issuing of 15 bonds, of the denomination of $1,000 each, to refund the outstanding indebtedness of the township of West Plains, county of Meade, and state of Kansas," and "Against issuing 15 bonds, of the denomination of $1,000 each, to refund the outstanding indebtedness of the township of West Plains, county of Meade, and state of Kansas"; and that the clerk was ordered to post and publish a proper notice of the election. On November 2, 1889, the board held a meeting, and made an official record of that meeting, which recites that an election had been held on that day pursuant to the notice the board had prescribed; that the board canvassed the vote at that election, found that 52 votes had been cast for, and 14 against, the proposition of Gould, and declared it carried; that thereupon Gould surrendered to the board "all and each of the outstanding indebtedness indicated by township scrip which he was the holder and owner of, amounting to $15,000"; that this was burned; that thereupon the trustee, clerk, and treasurer, who composed the board, "did then and there execute and deliver to said W. C. Gould, in lieu of the $15,000 township scrip that had been destroyed, 15 bonds," which were described by date, amount, number, to whom and on what account issued, and when due, as prescribed by sections 3 and 4 of chapter 50, supra; and that, "no further business appearing, the board adjourned." These are the material facts, and all the material facts, disclosed by the records of the meetings of the township board with reference to these bonds. The facts were, however, that on October 23, 1889, before the proceedings of the board were had, which appeared in the record of the meeting of that day, the American Sugar Company, a corporation, submitted to the board at its special meeting a written proposition to construct a sugar factory in the township if $15,000 of refunding bonds were donated to it by the township. The township trustee and township clerk, at the request of the president of the sugar company, thereupon executed and delivered to W. C. Gould $15,000 in scrip, in the form of orders on the treasurer, without any consideration whatever, and for the purpose of creating an apparent debt of the township to be converted into refunding bonds. After the bonds were executed, they were not delivered to Gould, as the record of the meeting of the board of that day shows, but were delivered to the president of the sugar company; and that company made a written agreement with the township, which is dated on that day, and recites an acknowledgment of the receipt of the bonds. The records of the meetings of the board do not disclose any of these facts tending to show that the bonds were issued for a sugar factory and not for the purpose of refunding the outstanding indebtedness of the township; but the proposition of the sugar company was on October 23, 1889, copied into the clerk's book in which the proceedings of the meeting of the board of that day appear before the record of that meeting, and the agreement made by the sugar company, dated November 2, 1889, was copied into the same book just after the record of the meeting of that day. These copies in the record book do not appear to be any part of the records of the proceedings of the meetings, and neither of them nor their originals are mentioned or referred to in those records. The complaint is that upon this state of facts the court below erred in rendering a judgment against the plaintiff in error.

J. T. Herrick, for plaintiff in error.

W. H. Rossington and Charles Blood Smith, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

May a municipal corporation make a false certificate and official record that its negotiable bonds were issued for a lawful purpose, and, after they have been bought by innocent purchasers for value in reliance upon this certificate or record, defeat them by the plea that the certificate and record were false, and that the bonds were in fact issued for an unlawful purpose? This is the question presented by the first objection to this judgment. It is that although the official record of the meetings of the township board that issued these bonds, and the recitals made by that board in the bonds themselves, show that they were issued for the lawful purpose of refunding an outstanding indebtedness of the township in accordance with the provisions of sections 1, 2, and 3 of chapter 50 of the Laws of Kansas of 1879, yet they were in fact issued for the unlawful purpose of procuring the erection of a sugar factory. Defenses of this character are unfortunately not novel. In answer to a like plea in National Life Ins. Co. v. Board of Education of City of Huron, 10 C. C. A. 637, 62 Fed. 778, 784, this court said:

"Nor is it any defense to such bonds, as against bona fide purchasers, that the citizens and officers of a municipal corporation, with the intention to use the proceeds of the bonds for an unlawful purpose, took the necessary steps to issue them for a lawful purpose, certified on the face of the bonds that they were issued for such lawful purpose, and then appropriated the proceeds to the unlawful purpose. Corporations are as strongly bound to an adherence to truth in their dealings with mankind as are individuals, and they cannot, by their representations or silence, induce others to part with their money or property, and then repudiate the obligations for which the money was expended, and which their statements represented to be valid."

Omaha Bridge Cases, 10 U. S. App. 101, 189, 2 C. C. A. 174, and 51 Fed. 309; Paxson v. Brown, 10 C. C. A. 135, 61 Fed. 874, and cases cited; Moran v. Commissioners, 2 Black, 722; Hackett v. Ottawa, 99 U. S. 86, 90; Ottawa v. National Bank, 105 U. S. 342, 345; Zabriskie v. Railroad Co., 23 How. 381.

The plaintiff in error, in the records of the meetings of its township board in which the bonds were directed to be issued, in the call for and the form of the vote at the election which authorized their issue, and in the bonds themselves, declared that they were issued for the lawful purpose of refunding the outstanding indebtedness of the township. The defendants in error purchased and paid for them with no notice that they were issued for any other purpose, and in the full belief that these declarations were true. It is no defense for this township, against the action of an innocent purchaser who has invested his money in these bonds, that the township board, and the voters of the township who authorized the board to issue them, knew that the township had no indebtedness to refund, and that all these records and declarations were false, and were made to evade the law. Against a bona fide purchaser the township is estopped to deny that these bonds were issued to refund its outstanding indebtedness.

But counsel for the plaintiff in error contends that the defendants in error were not bona fide purchasers. No claim is made that they had any actual notice that the bonds were not issued and used for

the purpose shown by the recitals they contain. The contention is that the copy of the proposition of the sugar company to build a factory for $15,000 in refunding bonds, and the copy of the agreement of the sugar company to do so (which contains a receipt for 15 refunding bonds), which have been found in the same book in which the records of the meetings of the township board were recorded, charge all purchasers of these bonds with constructive notice that the records of the meetings of the board and the recitals in the bonds were false, and that the bonds were issued for an unlawful purpose. This position is untenable. The recitals in the bonds themselves are fatal to it. They declare that the bonds were issued for a lawful purpose. Each bond contains a recital that it was issued by virtue of, and in accordance with, the provisions of the statutes, for refunding the indebtedness of municipal corporations to which we have referred, and the further recital that "all acts, conditions, and things required to be done precedent to and in the issuing of said bonds have been done, happened, and performed in regular and due form as required by law." The township board was the governing body of this township. It had been authorized by a vote of the electors to issue these bonds to refund the indebtedness of this township. It was vested by the statutes with the power, and the duty was imposed upon it, to determine the existence and amount of the indebtedness for which the bonds should issue. It found the scrip held by Gould to be an outstanding indebtedness of the township, and directed these bonds to be issued to refund it. They issued them. They inserted a recital in them that they were issued for that purpose. Every member of the township board signed the bonds which contained this recital as an officer of the township. The subsequent purchase of these bonds by the plaintiffs in error for value made the estoppel of the township to deny this recital complete. No proposition is now better settled than that "where the municipal body has lawful authority to issue bonds or negotiable securities, dependent only upon the adoption of certain preliminary proceedings, and the adoption of those preliminary proceedings is certified on the face of the bonds by the body to which the law intrusts the power, and upon which it imposes the duty, to ascertain, determine, and certify this fact before or at the time of issuing the bonds, such a certificate will estop the municipality, as against a bona fide purchaser of the bonds, from proving its falsity to defeat them." National Life Ins. Co. v. Board of Education of City of Huron, 10 C. C. A. 637, 62 Fed. 792, and cases there cited; City of Cadillac v. Woonsocket Inst. for Sav., 7 C. C. A. 574, 578, 58 Fed. 935. Moreover, the copies of the offer and agreement of the sugar company in the record book of the board would not have been constructive notice of the attempted fraud and malfeasance of the township officers in the absence of these recitals. The presumption is that township officers tell the truth in their record, and perform their official duties. To charge a purchaser with notice that these bonds were unlawfully issued on account of the copies of this proposition and agreement found in the record book, would require him to presume from them that all these

officers had violated their official oaths and made the official records of their meetings a tissue of falsehood. No purchaser of the bonds was charged by these copies with any such notice. They constituted no part of the official record of the meetings of the board, and they were not referred to therein. No one was bound to go further than to examine the record of those meetings. That record exhibited a perfect compliance with the statutes; and the copies of these statements outside the record charged a purchaser who knew nothing of them with no constructive notice of anything, whether they appeared in the same book with the records of the board or elsewhere.

The objection that the act under which these bonds were issued gave no authority to the township to issue negotiable bonds is, in our opinion, untenable. In the cases of Merrill v. Monticello, 138 U. S. 673, 11 Sup. Ct. 441; Hill v. Memphis, 134 U. S. 198, 10 Sup. Ct. 562, and Brenham v. Bank, 144 U. S. 173, 12 Sup. Ct. 559, cited in support of this objection, and in the cases referred to in the opinions in those cases, none of the acts there under consideration authorized the municipal bodies to issue bonds at all; and the extent to which those decisions go is to hold that the power to issue negotiable bonds is not to be implied from the limited power to borrow money or to incur indebtedness. The act under consideration in this case authorized this township to "issue new bonds," without any restriction as to their negotiability. This grant of power to a municipal body to issue bonds must be interpreted to give that body power to issue municipal bonds in the usual form of such securities. The usual—nay, it may almost be said the universal—form of such securities is that of a negotiable bond payable to bearer; and, in our opinion, it was bonds in this form, and in no other, that the legislature of Kansas had in mind and intended to give this township power to issue by this act. City of Cadillac v. Woonsocket Inst. for Sav., 7 C. C. A. 574, 576, 58 Fed. 935; Ashley v. Supervisors, 60 Fed. 55, 66, 8 C. C. A. 455.

To the suggestion that the bonds were required to be payable in the name of the holder of the indebtedness compromised, the answer is that there is no such express provision or restriction in the act. The only provision on this subject is that "it shall be the duty of the proper officers to issue such bonds  *  *  *  to the holder of such indebtedness in the manner prescribed in this act." It goes without saying that the issue to the holder of such indebtedness of bonds payable to bearer would be as exact and complete a compliance with this provision as to issue to him bonds payable to himself.

To the argument that the intention of the legislature must have been that the bonds should be payable to the order of the holder of the indebtedness compromised, and not to bearer, because the act required the county clerks to keep a record of all bonds issued in their respective counties, the date, number, and amount thereof, to whom and on what account issued, and when the same became due, and that these county clerks could only learn to whom such bonds were issued in case the bonds themselves were payable to the order of the party to whom they were issued, it is a complete answer that the

record of the township clerk, which in this case shows, as it should show in every case, the facts which the county clerk is bound to record, is the best evidence of those facts,—the evidence upon which the county clerk is bound to rely in preference to the floating bonds, many of which may never be presented to him.  And it goes without saying that the record of the township clerk could show with equal facility and truth to whom the bonds were issued, whether they were payable to bearer or to the order of the holder of the prior indebtedness.

Another objection to this judgment is that these bonds were unauthorized, because the act under which they were issued was, in so far as it authorizes municipal townships to issue refunding bonds, in violation of section 16, art. 2, of the constitution of the state of Kansas, which provides that, "no bill shall contain more than one subject, which shall be clearly expressed in its title," because the subject of refunding the indebtedness of municipal townships was not expressed in its title.  The title of the bill was:  "An act to enable counties, municipal corporations, boards of education of any city, and school districts, to refund their indebtedness."  The contention is that townships are not municipal corporations proper, but quasi municipal corporations, like counties, boards of education, and school districts; and, inasmuch as the title of the bill especially mentioned these quasi municipal corporations, the presumption is that no quasi municipal corporations were referred to by the term "municipal corporations."  This argument is more ingenious and plausible than convincing.  It goes without saying that there is a marked difference between the powers and duties of municipal corporations proper, such as incorporated cities and villages, and those of quasi municipal corporations, such as counties and townships.  Nevertheless, where this distinction is immaterial, quasi municipal corporations are thought of, spoken of, and treated as municipal corporations.  In the thought and speech of lawyers, legislators, and courts, they are treated as a species of the genus municipal corporations.  Ordinarily, the term "municipal corporations" is used to distinguish public political corporations from private corporations, and it generally includes within its meaning all public political corporations, whether municipal or quasi municipal.  The object of the constitutional provision under consideration is to require the title of a bill to give notice to the legislature of the subject treated in it.  There was nothing to call the attention of the legislators to the rather nice distinction between municipal and quasi municipal corporations in the enactment of this law, which confessedly empowers some classes of both municipal and quasi municipal corporations to refund their indebtedness; and it is more probable that the term "municipal corporations" in the title to this bill, gave notice to the legislature that the bill treated of authority for all public political corporations of the state to refund their indebtedness, than that it gave notice to them that it excluded municipal townships from the exercise of that authority.

This view is strengthened by a glance at some of the language used by the legislature and by the supreme court of the state of Kansas in treating of these townships.

In the General Statutes of Kansas of 1868 (chapter 110, art. 1) this provision is found:

"Each organized township in the state shall be a body politic and corporate, and, in its proper name, sue and be sued; may appoint all necessary agents and attorneys in that behalf, and may make all contracts that may be necessary and convenient for the exercise of its corporate powers."

In section 1, c. 168, of the Laws of Kansas of 1885, the legislature provided that:

"The township trustee, clerk and treasurer of each municipal township in the state shall constitute a board of commissioners of highways, and township auditing board for the respective townships."

In section 1, c. 235, of the Laws of 1887, the legislature provided that:

"Any municipal township in any county in this state is hereby authorized to provide and secure to the inhabitants thereof, within such township, parks and cemeteries in the manner and form hereinafter designated."

In Riley v. Township of Garfield, 38 Pac. 564, the supreme court of Kansas, in speaking of a township in that state, said: "That township is, as a public municipal corporation, the successor of Garfield county."

It is difficult to come to the conclusion that a legislature that had declared townships to be bodies corporate, and had repeatedly called them "municipal townships," would not have been notified that they were referred to by the term "municipal corporations." Moreover, the article of the constitution under consideration should not be enforced in a narrow or technical spirit. Unless it clearly appears that the subject under consideration was not so expressed in the title that the legislature was thereby notified of its proposed consideration, the law ought not to be stricken down by the court as unconstitutional. Travelers' Ins. Co. v. Township of Oswego, 7 C. C. A. 669, 676, 59 Fed. 58; City of Eureka v. Davis, 21 Kan. 580; Philpin v. McCarty, 24 Kan. 402; State v. Barrett, 27 Kan. 217; Commissioners of Cherokee Co. v. State, 36 Kan. 337, 13 Pac. 558; In re Pinkney, 47 Kan. 94, 27 Pac. 179.

In view of the common use of the term "municipal corporations" to distinguish public from private corporations, of the declaration of the legislature of Kansas that townships in that state are bodies corporate, of the repeated use by the legislature of the term "municipal township" to describe one of them, and of the reference to one of them as a "public municipal corporation" by the supreme court of that state, it is not so clear that the legislature was not notified by the term "municipal corporations" in this title that municipal townships would be considered in the bill, that any portion of this law should be declared unconstitutional.

Finally, it is argued that these bonds are void because chapter 50, supra, authorized the refunding of indebtedness that had matured or was maturing at the date when it took effect, on March 10,

1879, only, and that the township of West Plains was not then in existence, and the defendants in error were charged with notice of that fact. But the supreme court of the state of Kansas has held that this statute authorized the refunding of any indebtedness, whether it was created prior or subsequent to the passage of the act. Riley v. Township of Garfield, 38 Pac. 560. In the absence of any question of commercial law, and of any question involving a violation of the national constitution, laws, or treaties, the federal courts follow the construction of state statutes given by the highest judicial tribunal of the state in the interest of uniformity of decision and harmony of action between the national and state systems of jurisprudence. Traveler's Ins. Co. v. Township of Oswego, 7 C. C. A. 669, 673, 674, 59 Fed. 58, and cases there cited. Moreover, independent consideration of this question has led us to the same conclusion reached by the supreme court of Kansas.

The judgment below must be affirmed, and it is so ordered.

THAYER, Circuit Judge (concurring). I concur in the foregoing opinion. The chief objection to a recovery on the bonds in suit is that they were issued under a law of the state of Kansas (Act March 10, 1879, supra) which did not contemplate or authorize the issuance of negotiable securities, and that the purchasers of the bonds were bound to take notice of the true construction of said act, and were not innocent holders. Whatever weight attaches to this argument is derived, in my judgment, from expressions found in Merrill v. Monticello, 138 U. S. 673, 11 Sup. Ct. 441, and in Brenham v. Bank, 144 U. S. 173, 12 Sup. Ct. 559, which were not decided for more than 10 years after the act of March 10, 1879, was passed, and therefore could have had no influence whatever on the legislature of Kansas in framing said act. It is safe to say that prior to March 10, 1879, municipal bonds aggregating millions of dollars had been executed and sold under the sanction of laws which, like the act now in question, authorized an issue of bonds with semi-annual coupons attached, without specifying whether they should be made negotiable in form or otherwise. It is doubtful whether a single bond had ever been put in circulation under such laws that did not contain words of negotiability, and more doubtful whether bonds not containing words of negotiability would have proven to be a marketable security. In 1879 it was the generally accepted view that a power conferred on a municipality to issue bonds, or simply to borrow money, carried with it, by necessary implication, a power to issue negotiable bonds. Bearing in mind these facts, a due respect for the legislature requires us to presume that if that body was solicitous of preventing frauds by making bonds issued under the act of March 10, 1879, nonnegotiable, it would have declared that they should be nonnegotiable in plain and direct terms, instead of employing language that was then deemed amply sufficient to warrant the execution of negotiable securities. I have no doubt that the legislature of Kansas intended by the act of March 10, 1879, to authorize the various municipalities named in that act to issue negotiable bonds, and, in my judgment, the language

of the act was adequate for that purpose, notwithstanding the decisions in Merrill v. Monticello and Brenham v. Bank, supra. The distinction between those cases and the one at bar is clearly pointed out in the foregoing opinion. According to well-settled rules of construction, the act of March 10, 1879, should be held to have conferred a power upon the defendant township which it was clearly intended to confer, and which the legislature had an undoubted right to grant. I concur in the order affirming the judgment.

CALDWELL, Circuit Judge (dissenting). It is obvious that no recovery can be had on the bonds in suit if we apply to the facts of this case the well-settled rules of law relating to the power of municipal corporations to issue bonds, and the rules which determine when such corporations are, and when they are not, precluded from availing themselves of meritorious defenses to such obligations.

Some of the rules on this subject are well summarized by the supreme court in the case of Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. 819. · In this case, Mr. Justice Brown, speaking for the court, said:

"It is the settled doctrine of this court that municipal corporations are merely agents of the state government for local purposes, and possess only such powers as are expressly given, or implied, because essential to carry into effect such as are expressly granted (1 Dill. Mun. Corp. § 89; Ottawa v. Carey, 108 U. S. 110, 2 Sup. Ct. 361); that the bonds of such corporations are void, unless there be express or implied authority to issue them (Wells v. Supervisors, 102 U. S. 625; Claiborne Co. v. Brooks, 111 U. S. 400, 4 Sup. Ct. 489; Concord v. Robinson, 121 U. S. 165, 7 Sup. Ct. 937; Kelley v. Milan, 127 U. S. 139, 8 Sup. Ct. 1101); that the provisions of the statute authorizing them must be strictly pursued; and that the purchaser or holder of such bonds is chargeable with notice of the requirements of the law under which they are issued (Ogden v. County of Daviess, 102 U. S. 634; Marsh v. Fulton Co., 10 Wall. 676; South Ottawa v. Perkins, 94 U. S. 260; Northern Bank v. Porter Tp., 110 U. S. 608, 4 Sup. Ct. 254; Hayes v. Holly Springs, 114 U. S. 120, 5 Sup. Ct. 785; Merchants' Exch. Nat. Bank v. Bergen Co., 115 U. S. 384, 6 Sup. Ct. 88; Harshman v. Knox Co., 122 U. S. 306, 7 Sup. Ct. 1171; Coler v. Cleburne, 131 U. S. 162, 9 Sup. Ct. 720; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654)."

In the case of Brenham v. Bank, 144 U. S. 173, 12 Sup. Ct. 559, the supreme court said:

"It is easy for the legislature to confer upon a municipality, when it is constitutional to do so, the power to issue negotiable bonds; and, under the well-settled law that any doubt as to the existence of such power ought to be determined against its existence, it ought not to be held to exist in the present case."

And the court held that express authority conferred on a city by its charter to borrow money did not authorize it to issue negotiable bonds for the money borrowed, and that a bona fide holder of such bonds could not recover thereon against the city.

In Hill v. Memphis, 134 U. S. 194, 10 Sup. Ct. 562, the supreme court, speaking by Mr. Justice Field, said:

"The inability of municipal corporations to issue negotiable paper for their indebtedness, however incurred, unless authority for that purpose is expressly given or necessarily implied for the execution of other express powers, has been affirmed in repeated decisions of this court."

In Merrill v. Monticello, 138 U. S. 673, 11 Sup. Ct. 441, the court said:

"It is admitted that the power to borrow money or to incur indebtedness carries with it the power to issue the usual evidences of indebtedness, by the corporation, to the lender or other creditor. Such evidences may be in the form of promissory notes, warrants, and perhaps, most generally, in that of a bond. But there is a marked legal difference between the power to give a note to a lender for the amount of money borrowed, or to a creditor for the amount due, and the power to issue for sale, in open market, a bond, as a commercial security, with immunity, in the hands of a bona fide holder for value, from equitable defenses. The plaintiff in error contends that there is no legal or substantial difference between the two; that the issuing and disposal of bonds in market, though in common parlance, and sometimes in legislative enactment, called a 'sale,' is not so in fact; and that the so-called 'purchaser' who takes the bond, and advances his money for it, is actually a lender, as much so as a person who takes a bond payable to him in his own name. * * * It does not follow that, because the town of Monticello had the right to contract a loan, it had therefore the right to issue negotiable bonds, and put them on the market as evidences of such loan. To borrow money, and to give a bond or obligation therefor which may circulate in the market as a negotiable security, freed from any equities that may be set up by the maker of it, are, in their nature and in their legal effect, essentially different transactions. In the present case, all that can be contended for is that the town had the power to contract a loan, under certain specified restrictions and limitations. Nowhere in the statute is there any express power given to issue negotiable bonds as evidence of such loan. Nor can such power be implied, because the existence of it is not necessary to carry out any of the purposes of the municipality. It is true that there is a considerable number of cases, many of which are cited in the brief of counsel for plaintiff in error, which hold a contrary doctrine. But the view taken by this court in the cases above cited and others seems to us more in keeping with the well recognized and settled principles of the law of municipal corporations."

Let application be made of these well-settled doctrines to the facts of this case.

At an early date in the history of the state of Kansas, issuing negotiable municipal bonds seems to have been one of the leading industries of the state. Under authority from the legislature, counties, cities, towns, school districts, and townships engaged in the business on an extensive scale, and issued their bonds to aid in building railroads, courthouses, jails, bridges, schoolhouses, and for other purposes. The business was carried on to an almost incredible extent.

Mr. Justice Miller, in his opinion in the case of Marcy v. Township of Oswego, 92 U. S. 637, says:

"In the case under consideration, this provision of the statute was wholly disregarded. I am not sure that the relative amount of the bonds and of the taxable property of the towns is given in these cases with exactness, but I do know that in some of the cases tried before me last summer in Kansas it was shown that the first and only issue of such bonds exceeded in amount the entire value of the taxable property of the town, as shown by the tax list of the year preceding the issue."

The acts authorizing the issue of these bonds commonly imposed conditions upon their issuance intended for the security and protection of the municipalities against an illegal or fraudulent exercise of the power; but notwithstanding these conditions, either through the ignorance or dishonesty of the officers of the municipalities intrusted with the exercise of this power, a large percentage of the bonds issued

under these acts were illegally or fraudulently issued. In very many cases the taxpayers received no consideration whatever for the bonds thus issued. A bond honestly issued for a full consideration was the exception, and not the rule. The acts referred to authorized the issue of negotiable bonds which, under the operation of the rule of decision of the supreme court of the United States, became fixed liabilities on the municipalities issuing them, notwithstanding no consideration was received for them. These liabilities were greater than the taxpayers of the municipalities affected could pay. A compromise and scaling of these obligations became a necessity. The act of March 10, 1879, was the result of this necessity. Profiting by past experience, the legislature sought to surround the power to issue these compromise bonds by every possible safeguard. The one essential thing to prevent frauds was accomplished by not making the bonds negotiable. The power of each of the municipalities named to issue bonds was restricted to the issue of bonds "to compromise and refund its matured and maturing indebtedness of every kind and description whatsoever."

The third section of the act provides that:

"When a compromise has been agreed upon, it shall be the duty of the proper officers to issue such bonds at the rate agreed upon to the holder of such indebtedness, in the manner prescribed in this act; but no bonds shall be issued under this act until the proper evidence of the indebtedness for which the same are to be issued shall be delivered up for cancellation: provided, that no compromise by any township or school district shall be of any validity unless assented to by the legal voters of such township or school district, at an election or school meeting called for such purpose; of which election or school meeting at least ten days' notice shall be given." Laws March 10, 1879, c. 50, § 3.

The fourth section provides that:

"A record shall be kept by the different county clerks of all bonds issued in such counties under this act, showing the date, number, and amount thereof, to whom and on what account issued, and when the same become due; and all bonds or other evidences of indebtedness refunded under this act shall have the words 'Paid in full' marked in a plain manner across the face of each bond and coupon so refunded, and such canceled obligations shall be carefully preserved in the office of the county clerk, or destroyed by the county commissioners; a register of the number, amount and date of issue of the same having first been made by the county clerk." Laws March 10, 1879, c. 50, § 4.

It will be observed (1) that under this act bonds can only be issued for the purpose of compromising previously existing indebtedness; (2) that the bonds issued for this purpose are to be issued "to the holder of such indebtedness"; and (3) that a record is to be kept by the county clerk of all bonds issued under the act, "showing the date, number, and amount thereof, to whom, and on what account issued, and when the same become due."

The object of these requirements, as was said by the supreme court in Hoff v. Jasper Co., 110 U. S. 53, 3 Sup. Ct. 476, was to provide "additional guaranties against fraudulent and irregular issues." Much of the old indebtedness of these municipalities represented no value received whatever, but had been fastened on municipalities by the fraudulent issue of negotiable bonds under acts which authorized the issue of such bonds, and it is morally certain the legislature never

intended to afford to the officers of every county, city, town, school district, and township in the state an opportunity to repeat the frauds by again empowering them to issue negotiable bonds. The act expressly requires that the new bonds shall be made payable to the holder of the old indebtedness without words of negotiability. That this is the proper construction of the act is rendered absolutely certain by the requirements that the new bonds shall be issued "to the holder of such indebtedness," and that the registration of the bonds by the county clerk shall show "to whom and on what account" the bonds were issued. It is obvious that such registration is impossible where the bonds on their face do not show "to whom and on what account" they are issued. These requirements of the act are not directory, but mandatory. They were intended to protect municipalities from precisely such frauds as this case discloses. Authority to issue bonds in the name of the holder of prior indebtedness does not confer on the officers of the municipality authority to issue bonds payable to bearer. If the legislature had intended that the bonds issued under this act should be "negotiable," that term would have been used in describing the bonds, or the requirement that the bonds should be made payable to the holder of old indebtedness would have been followed by words of negotiability. The legislature was evidently striving to pass an act that would preclude the officers of these municipalities from perpetrating the frauds upon the taxpayers which had been common under other acts which did authorize the issue of negotiable bonds. To prevent the perpetration of fraud, the act required the bonds to be payable to the holders of the old indebtedness without words of negotiability, and also required that they should be registered in the county clerk's office and that such registration should show "to whom and on what account" the bonds were issued. Bonds issued under this act are not complete or perfect instruments until they are registered in the clerk's office in the manner required by the act. By necessary implication, the duty of having this registration made is imposed upon the officers of the municipality issuing the bonds. But, conceding that one to whom the bonds were issued might procure the registration to be made, that could only be done when the bonds on their face disclosed the facts essential to enable the clerk to make the registration required by the act. To do this the bonds must be made payable to some person by name, and they must state on their face on what account they were issued. These requirements of the act were disregarded in the issue of the bonds in suit. A copy of the bond as issued is here given in the note.[1]

[1] No. 1.                    United States of America.                    $1,000.00
West Plains Township Refunding Bond.
West Plains Township, County of Meade,
State of Kansas.

Know all men by these presents, that the township of West Plains, in the county of Meade, state of Kansas, acknowledges itself indebted to the bearer in the sum of one thousand dollars, lawful money of the United States of America, to be paid in thirty years from the first day of July, A. D. 1889, with interest thereon at the rate of six per cent. per annum, payable semi-annually, on the first days of January and July, in each year, upon the

These bonds could never be registered as required by law, because no payee was named therein, and the account upon which they were issued is not stated.

To escape the force of the argument founded on the requirements of the act quoted, the majority opinion states:

"It is a complete answer that the record of the township clerk, which in this case shows, as it should show in every case, the facts the county clerk is bound to record, is the best evidence of those facts,—the evidence upon which the county clerk is bound to rely in preference to the floating bonds, many of which may never be presented to him."

It is a sufficient answer to this suggestion to say that the act requires this record to be kept by the county clerk, and not by the township clerk, and that any record of the township clerk, so far as it relates to the requirements of the act under which the bonds were issued, is extraofficial, and has no legal sanction whatever.

In Barnett v. Denison, supra, the supreme court say:

"It is certainly a reasonable requirement that the bonds issued shall express upon their face the purpose for which they were issued. In any event. it was a requirement of which the purchaser was bound to take notice, and, if it appeared upon their face that they were issued for an illegal purpose, they would be void. If they were issued without any purpose appearing at all upon their face, the purchaser took the risk of their being issued for an illegal purpose; and, if that proved to be the case, they are as void in his hands as if he had received them with express notice of their illegality. Ordinarily, the recital of the fact that the bonds were issued in pursuance of a certain ordinance would be notice that they were issued for a purpose specified in such ordinance (Hackett v. Ottawa, 99 U. S. 86), and the city would be estopped to show the fact to be otherwise (Ottawa v. National Bank, 105 U. S. 342). But, where the statute requires such purpose to be stated upon the face of the bonds, it is no answer to say that the ordinance authorized them for a legal purpose, if in fact they were issued without consideration, and for a different purpose."

In Anthony v. County of Jasper, 101 U. S. 693, the court say:

"There can be no doubt that it is within the power of the state to prescribe the form in which municipal bonds shall be executed in order to bind the public for their payment. If not so executed, they create no legal liability. Other circumstances may exist which will give the holder of them an equitable right to recover from the municipality the money which they represent, but he cannot enforce the payment or put them on the market

---

presentation of the coupons hereto attached as they become due; both principal and interest being payable at the Fiscal Agency of the state of Kansas, in the city of New York. This bond is one of a series of fifteen bonds of one thousand dollars each, and issued by virtue of and in accordance with the provisions of sections one, two, and three of chapter fifty of the Laws of 1879; being an act of the legislature of the state of Kansas, entitled "An act to enable counties, municipal corporations, the board of education of any city and school districts to refund their indebtedness," which said act took effect March 10th, 1879. And it is certified and recited that all acts, conditions, and things required to be done precedent to and in the issuing of said bonds have been done, happened, and performed in regular and due form, as required by law. In testimony whereof, this bond has been issued and signed by the township trustee, attested and registered by the township clerk, and countersigned by the township treasurer of said township of West Plains, in the county of Meade, state of Kansas, this 2nd day of November, A. D. 1889.        W. S. Hopkins, Township Trustee.
    Attested and registered: M. S. Parsons, Township Clerk.
    Countersigned: R. E. Turner, Township Treasurer.

as commercial paper. * * * Dealers in municipal bonds are charged with notice of the laws of the state granting power to make the bonds they find on the market. This we have always held."

Every purchaser of these bonds was bound to take notice of the requirements of the act under which they purported to be issued. No recitals in the bonds could absolve him from this obligation. The form of the bonds was not such as the act required, and therefore no holder thereof can claim to be a bona fide purchaser, no matter what recitals appear on the face of the bonds. Anthony v. Jasper Co., supra; Nesbit v. Independent Dist., 144 U. S. 610, 12 Sup. Ct. 746.

In construing the act, every provision of it must be considered and given effect, and it must be construed in the light of the legislative history of the state bearing on the subject, and the result of that legislation and the evil sought to be cured by the new act. When so construed, it is obvious that it is not the purpose of the legislature to open anew this Pandora's box. But, if it was doubtful whether the legislature intended the bonds to be issued under this act should be negotiable, the doubt, as we have seen, must be resolved against their negotiability. Brenham v. Bank, supra.

One of the reasons assigned why the court should strain a point to hold bonds issued by municipal corporations negotiable, and thereby cut off all defenses, is that they "are made to raise money by their sale, and this object would be defeated," and their "ready salability and market value" impaired, by holding them nonnegotiable. But this argument has no application to this case. Under the act we are considering, bonds cannot be issued for borrowed money or for sale, but can only be lawfully issued in compromise of indebtedness existing prior to the passage of the act. The well-settled rule, as we have seen, is that a municipal corporation cannot issue negotiable paper "unless authority for that purpose is expressly given or necessarily implied for the execution of other express powers." Hill v. Memphis, supra. It is conceded the power is not expressly given by this act, and it is equally clear that its exercise is not necessary to the execution of the express power granted, which is merely to give a new evidence of debt in compromise of an old debt. It is a well-known fact that no reputable dealer in municipal securities will buy municipal bonds or put them upon the market until he has made inquiry into the legality and honesty of their issue. Not one of the principal cities in this circuit could sell its bonds to any dealer in such securities until he had examined, or caused to be examined, the statutes of the state and the ordinances and records of the city relating to their issue, and satisfied himself that the city not only had the power to issue the bonds, but that they were issued for a lawful and honest purpose. It is therefore only dishonest and corrupt officers and disreputable dealers, who divide with them the proceeds of their frauds, that profit by the business of issuing fraudulent municipal bonds. If bonds are honestly issued, for a legal purpose, they are good and valid, with or without recitals. Even where bonds are irregularly or illegally issued, if they were intended to evidence a legal and valid indebtedness, the debt may be collected from the municipality, although the bond itself is void, and the holder of the void bond will be sub-

rogated to the rights of the original creditor. It is apparent, therefore, that the only office performed by recitals in municipal bonds in any case is to give validity and effect to bonds issued without consideration and fraudulently. And the effect of the doctrine of the majority of the court in this case is to give validity to fraudulent bonds, and encourage their issue. Under the ruling of the majority of the court, the old industry of issuing fraudulent bonds will probably be revived in this state, and an act designed exclusively to afford relief against previous burdens of that character, and to prevent a repetition of such frauds, will be used, not only to increase such burdens, but, as in this case, to impose them where none ever existed before. To sum up: Under a carefully guarded act, which bears evidence in its every line of a settled purpose on the part of the legislators to limit the powers of the officers acting thereunder to the issue of nonnegotiable bonds in compromise of the then-existing indebtedness of the municipalities of the state, the majority of the court hold that it is open to the officers of every county, city, town, school district, and township in the state of Kansas to issue the negotiable bonds of the public corporations named, without any consideration, and for all manner of illegal purposes, and to any amount, and make them binding obligations by simply inserting in them the false recital that they were issued under the act mentioned; and that the purchasers of such bonds are not chargeable with notice of the requirements of the act under which they purport to be issued, nor with notice of what the records of the municipality disclose in relation to their issue. This is going much further than the supreme court of the United States has ever gone, and is in palpable conflict with the later decisions of that court which are cited in this opinion. The judgment of the circuit court should be reversed.