## HOWARD v. KIOWA COUNTY.

(Circuit Court, D. Kansas, Second Division. March 19, 1896.)

No. 502.

1. COUNTY BONDS—VALIDITY—POWERS OF COMMISSIONERS.
   The fact that bonds issued by Kiowa county, Kan., under the refunding act of 1879, were issued by the county commissioners without a previous vote of the people, does not affect their validity, for by Gen. St. Kan. 1889, § 1613, it is provided that the "powers of a county as a body politic and corporate shall be exercised by the board of county commissioners"; and, as there is nothing in the funding act prescribing by whom its powers shall be exercised, that duty falls upon the commissioners.

2. SAME—REFUNDING BONDS—COUNTY WARRANTS.
   A statute authorizing the funding by a county of "matured and maturing indebtedness of every kind and description" (Act Kan. March 8, 1879) includes indebtedness evidenced by county warrants.

3. SAME—NEGOTIABLE BONDS.
   Statutory power to issue bonds includes power to make them negotiable, unless restricted by positive enactment. West Plains Tp. v. Sage, 16 C. C. A. 553, 69 Fed. 943, followed.

This was an action by George R. Howard against the county of Kiowa, Kan. Plaintiff demurs to the answer.

Hutchings & Keplinger, for plaintiff.

S. S. Ashbaugh and L. M. Day, for defendant.

WILLIAMS, District Judge. This is a suit upon coupons cut from 79 funding bonds of the defendant county, issued February 2, 1889, to take up $44,000 in railroad aid bonds and $35,000 in county warrants. The defendant has filed an elaborate answer, to which a demurrer has been interposed. Several defenses are set up.

1. It is said that the question of whether the bonds in suit should be issued was not submitted to a vote of the people of the county. To that it need only be replied that the act authorizing the issue of the bonds does not require a popular vote. By section 1613 of the General Statutes of Kansas of 1889, it is provided: "The powers of a county as a body politic and corporate shall be exercised by the board of county commissioners." And, there being nothing in the funding act prescribing by whom its powers shall be exercised, it is plain that the duty falls upon the county board. Counsel argue with great earnestness.that, if such be the case, a corrupt board of commissioners could destroy the financial prosperity of the county. That is true. The power to issue commercial paper is the power to destroy him in whose name it is issued. It should be conferred with care, but, when it has been conferred, it is not for the courts to deny the grant. Nor is it by any means certain that the power would be

exercised more wisely by the people of the county than by the commissioners. The history of bond issues in this country has shown that the people are as prone to listen to the beguiling of artful emissaries of projected railroads as their commissioners could possibly be. Our government is representative, not democratic. It concedes the final sovereignty to the people, but they are expected in all ordinary contingencies to act not in person, but through their representatives. In that way they are ruled by those whom they select as wisest and most patriotic, not by the shifting tempests of popular excitement. The principle of direct government by the people, and of the referendum, has found little favor in this country. The fact that in numerous other acts for the issue of bonds a popular vote has been required can throw no light upon one where nothing of the sort is provided for. If anything, it shows that the legislature was aware of the necessity of making express provision for such a course, and lends significance to its omission in this instance.

2. It is said that the act gives no authority to fund warrants. The act of 1879 authorizes the funding of "matured and maturing indebtedness of every kind and description whatsoever." It is gravely argued that a warrant is not a debt; but it is apparent that it not only represents a debt, but one which has been audited and allowed, which is mature at the date of its allowance. And the funding of warrants is often essential to the prosperity of the county. They become so numerous that they are greatly depreciated in value. Everything furnished to the county is upon the basis of the actual value of the warrants, necessitating the creation of a large debt for the purchase of trifling commodities. Under these circumstances, the only salvation frequently lies in funding a portion of them, so that the remainder may regain something like their face value, and the business of the county may no longer be transacted on the basis of a ruinous discount.

3. It is said that no authority is granted to make the bonds negotiable. The character of municipal bonds is as well established as that of a bill of exchange or promissory note, and it is no more necessary to say "negotiable bonds" than to say "negotiable notes" or "negotiable bills." In few of the acts authorizing the issue of such bonds is it declared that they shall be negotiable. When the power to issue them is given, the officers authorized may, unless restricted by positive enactment, make them payable to order or to bearer, and such is the uniform practice. Thus, in Ashley v. Supervisors, 8 C. C. A. 455, 60 Fed. 55, the court of appeals for the Sixth circuit held: "Statutory authority to issue and market bonds, which are to run for a long period of time, and bear interest, held to authorize, by implication, bonds negotiable in form." So, in City of Cadillac v. Woonsocket Inst., 7 C. C. A. 574, 58 Fed. 935, the same court held that "statutory power to issue 'bonds' for loans lawfully made includes power to make the bonds negotiable." In West Plains Tp. v. Sage, 16 C. C. A. 553, 69 Fed. 943, this particular statute was construed by the circuit court of appeals for this circuit, and held to authorize the issue of bonds negotiable in form.

4. It is said that the railroad aid bonds surrendered in exchange for the bonds in suit were void, because voted for within a year after the organization of the county, and because in excess of the constitutional limit. In the view which I take of the case, it is not necessary to decide that question.

The bonds were issued by the proper officers, and contained the following recital:

"This bond is one of a series of bonds of like amount, tenor, and effect executed and issued by the county commissioners of said Kiowa county, to refund its matured and maturing indebtedness heretofore legally created by said county, and in accordance with an act of the legislature of the state of Kansas entitled 'An act to enable counties * * * to refund their indebtedness,' approved March 8, 1879; and it is hereby certified that the total amount of this issue of bonds does not exceed the actual amount of the outstanding indebtedness of Kiowa county, and that all the requirements of the provisions of the foregoing act have been strictly complied with."

It is plain that, under the repeated decisions of the federal courts, the purchaser was entitled to rely upon this recital, and was not bound to inquire into the consideration for which the bonds were issued.

Thus, in Hackett v. Ottawa, 99 U. S. 96, Mr. Justice Harlan says:

"It would be the grossest injustice, and in conflict with all the past utterances of this court, to permit the city, having power under some circumstances to issue negotiable securities, to escape liability upon the ground of the falsity of its own representations, made through official agents and under its corporate seal, as to the purposes with which these bonds were issued. Whether such representations were made inadvertently, or with the intention, by the use of inaccurate titles of ordinances, to avert inquiry as to the real object in issuing the bonds, and thereby facilitate their negotiation in the money markets of the country, in either case the city, both upon principle and authority, is cut off from any such defense. What this court declared, through Mr. Justice Campbell, in Zabriskie v. Railroad Co., 23 How. 381, as to a private corporation, and repeated, through Mr. Justice Clifford, in Bissell v. City of Jeffersonville, 24 How. 287, as to a municipal corporation, may be reiterated as peculiarly applicable to this case: 'A corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind, and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct had superinduced.'"

So, in Ottawa v. National Bank, 105 U. S. 343, the same learned judge says:

"If the purchaser, under some circumstances, would have been bound to take notice of the provisions of the ordinances whose titles were recited in the bonds, he was relieved from any responsibility or duty in that regard by reason of the representation, upon the face of the bonds, that the ordinances provided for a loan for municipal purposes. Such a representation, by the constituted authorities of the city, would naturally avert suspicion of bad faith upon their part, and induce purchasers to omit an examination of the ordinances themselves; and, consequently, the city was estopped, as against a bona fide holder for value, to say that the bonds were not issued for legitimate or proper municipal or corporate purposes."

In Town of Coloma v. Eaves, 92 U. S. 484, it was held:

"Where, by legislative enactment, authority has been given to a municipality, or to its officers, to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the enactment that the officers of the municipality were invested with power to decide whether that condition has been complied with, their recital that it has

been, made in the bonds issued by them, and held by a bona fide purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal."

In Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216, it was held:

"When there is an express recital upon the face of a municipal bond that the limit of issue prescribed by the state constitution has not been passed, and the bonds themselves do not show that it had, the holder is not bound to look further."

In City of Cadillac v. Woonsocket Inst., 58 Fed. 935, 7 C. C. A. 574, it was held by the court of appeals of the Sixth circuit that:

"Recitals in bonds issued by a city council under statutory authority, that they are 'refunding' bonds, issued to take up 'old bonds falling due,' estop the city from showing, as against bona fide holders, that the old bonds were invalid, and therefore insufficient to support the issuance of the new ones."

Again, in Ashley v. Supervisors, 8 C. C. A. 455, 60 Fed. 55, it was held:

"Refunding bonds, payable to bearer, recited that they were issued by the board of supervisors in conformity with the provision of an act authorizing the county to issue such bonds, and provide for the retirement of outstanding bonds. Held, that the purchaser was not bound, in the face of the recitals borne by the bonds, to investigate the nature of the refunded indebtedness."

Many other cases might be cited, but, as the circuit court of appeals for this circuit has passed upon this very statute, it is not deemed necessary to pursue the inquiry further.

In West Plains Tp. v. Sage, 16 C. C. A. 553, 69 Fed. 943, bonds were issued under this act containing recitals similar to those contained in the bonds now before the court; but instead of being issued in exchange for warrants, as alleged, they were issued to secure the location of a sugar factory; and it was held that the township was estopped by the recitals to set up the fraud as against a bona fide purchaser. Even were I inclined to the contrary view (which is not the case), I should be bound by that decision. When we contemplate the calamitous consequences which have resulted from it, we may regret that the supreme court should have established the doctrine of estoppel by recitals in municipal bonds; but it is now too deeply imbedded in the law to be shaken, and is conclusive of this case.

The demurrer to the answer is therefore sustained.