ASHUELOT NAT. BANK OF KEENE v. SCHOOL DIST. NO. 7, VALLEY COUNTY.

(Circuit Court of Appeals, Eighth Circuit. May 15, 1893.)

No. 120.

MUNICIPAL CORPORATIONS—NEGOTIABLE BONDS—AUTHORITY.

Act Neb. Feb. 15, 1869, (Laws 1869, pp. 115–120,) § 30, provides that "any school district shall have power and authority to borrow money to pay for the sites of schoolhouses, and to erect buildings thereon, and to furnish the same, by a vote of a majority of the qualified voters." Act Feb. 27, 1873, §§ 1, 3, (Gen. St. Neb. 1873, pp. 883, 884,) provides for the registering of all "school-district bonds voted and issued pursuant to" such act of 1869. *Held,* that these sections do not confer authority to issue negotiable securities, and such securities issued by school districts are void even in the hands of an innocent purchaser. Brenham v. Bank, 12 Sup. Ct. Rep. 559, 144 U. S. 173, followed. 41 Fed. Rep. 514, affirmed.

In Error to the Circuit Court of the United States for the District of Nebraska.

This was an action by the Ashuelot National Bank of Keene, N. H., against school district No. 7, Valley county, Neb. There was judgment for defendant in the court below, (41 Fed. Rep. 514,) and plaintiff brings error. Affirmed.

C. S. Montgomery, for plaintiff in error.
R. S. Hall, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. This action was brought by the plaintiff in error, in the circuit court for the district of Nebraska, to recover the amount of certain negotiable bonds, with interest coupons attached, which were alleged to have been executed on November 21, 1874, by school district No. 7, in Valley county, Neb., for the purpose of building and furnishing a schoolhouse for said district. There was a trial before a jury, and a special verdict was returned, upon which the circuit court entered a judgment in

favor of the defendant, whereupon the plaintiff sued out a writ of error.

Each of the bonds in controversy contains a recital that it was issued "in pursuance of an act of the legislature of the state of Nebraska entitled 'An act to establish a system of public instruction for the state of Nebraska,' approved February 15, 1869, and acts amendatory and supplemental thereto;" and it is conceded by counsel for the plaintiff in error, that the authority of the school district to issue the bonds in question, is wholly dependent upon the act of February 15, 1869, which is referred to. in said bonds, and an act passed on February 27, 1873, with reference to the registration of township, precinct, and school-district bonds. On the other hand, counsel for the school district contends, that the acts of February 15, 1869, and February 27, 1873, did not confer upon school districts in the state of Nebraska any power or authority to issue negotiable securities; and as the bonds sued upon are, in form, negotiable instruments, it is further insisted that they were issued without authority of law, and are for that reason void, even in the hands of an innocent purchaser for value. As this contention lies at the threshold of the case, it will be first considered.

The only provision contained in the act of February 15, 1869, which can be held to authorize the issuance of bonds in any form, is found in section 30 of that act, and is as follows:

"Sec. 30. Any school district shall have power and authority to borrow money to pay for the sites of schoolhouses, and to erect buildings thereon, and to furnish the same, by a vote of a majority of the qualified voters of said district present at any annual meeting or special meeting: provided, that a special meeting for such purpose shall be upon a notice given by the director of such district at least twenty days prior to the day of such meeting, and that the whole debt of any such district at any time, for money thus borrowed, shall not exceed $5,000." Laws Neb. 1869, pp. 115–120.

Subsequently, on February 27, 1873, the legislature of Nebraska passed another act, containing five sections, entitled "An act to provide for the registration of precinct or township and school-district bonds," the material portions of which are contained in the first and third sections, and are as follows:

"Section 1. That from and after the passage of this law it shall be the duty of the precinct or township and school-district boards or officers, after having first filed for record with the county clerk the question of submission, return of votes for and against, notice and proof of publication, to register with the county clerk all precinct or township and school-district bonds voted and issued pursuant to * * * sections 30, 31, and 32 of 'An act to establish a system of public instruction for the state of Nebraska,' approved February 15, 1869." "Sec. 3. It shall be the duty of the county clerk, on presentation of any precinct or township or school-district bonds for registry, to register the same in a book prepared for that purpose, which register shall contain—First, the number or name of the precinct, or township, or school district; second, the number of the bond; third, the date of the bond; fourth, to whom payable; fifth, where payable; sixth, when due; seventh, when interest is due; eighth, amount of bond; ninth, reference by page to the book provided for in section 2, giving history of bond. The county clerk shall receive a fee of 25 cents for every bond so registered." Gen. St. Neb. 1873, pp. 883, 884.

These being the only laws in force in the state of Nebraska on the 21st of November, 1874, under and by virtue of which the power to issue negotiable securities can be derived, the question arises whether they are adequate for that purpose. In the case of Merrill v. Monticello, 138 U. S. 673, 681, 11 Sup. Ct. Rep. 441, it was held that although a municipal corporation has an implied power to borrow money, and to give written evidence of the indebtedness in the form of a note or bond, yet that it has no authority, as an incident of such power, to issue a negotiable security. It was further held that the power to borrow money, and the power to give a negotiable bond which may circulate in the market freed from all equitable defenses, are essentially different powers, and that the latter power will not be implied from the former. In a later case (Brenham v. Bank, 144 U. S. 173, 12 Sup. Ct. Rep. 559) it was held that a city which had an express power, under its charter, "to borrow for general purposes not exceeding $15,000 on the credit of the city," had no authority, as an incident of such power, to issue negotiable securities. In accordance with that view, certain negotiable bonds, in the hands of an innocent purchaser, were declared to be void, although another provision of the charter of the city declared, that "bonds of the corporation of the city of Brenham shall not be subject to tax under this act," and although the latter clause could only have had reference to bonds issued in pursuance of the power to borrow money for general purposes on the credit of the city. In speaking of the scope of the decision in Brenham v. Bank, Mr. Justice Harlan, in the dissenting opinion, says:

"It seems to us that the court in the present case, announces for the first time that an express power in a municipal corporation to borrow money for corporate or general purposes does not, under any circumstances, carry with it, by implication, authority to execute a negotiable promissory note or bond for the money so borrowed. * * * A declaration by this court that such notes and bonds are void because of the absence of express legislative authority to execute negotiable instruments for the money borrowed will, we fear, produce incalculable mischief." Pages 196, 197, 144 U. S., and page 568, 12 Sup. Ct. Rep.

It is unnecessary for us to assert that the decision last referred to goes to the full extent last indicated, of holding that a municipal corporation can only acquire authority to issue negotiable securities, by a statute which confers such power in express language, and that the power will not be implied under any circumstances. We think, however, that we may fairly affirm that the two authorities heretofore cited do establish the following propositions: First, that an express power conferred upon a municipal corporation to borrow money for corporate purposes does not in itself carry with it an authority to issue negotiable securities; second, that the latter power will never be implied, in favor of a municipal corporation, unless such implication is necessary to prevent some express corporate power from becoming utterly nugatory; and, third, that in every case where a doubt arises as to the right of a municipal corporation to execute negotiable securities the doubt should be resolved against the existence of any such right. The

application of these principles to the case at bar satisfies us that the judgment of the circuit court was for the right party, and should not be disturbed. Section 30 of the act of February 15, 1869, heretofore referred to, did not confer upon the school district any authority to issue negotiable securities such as were in fact issued. The subsequent act of February 27, 1873, bears evidence that a subsequent legislature assumed that school districts might issue bonds under the authority conferred to borrow money by section 30 of the act of February 15, 1869. But the latter act did not, in terms, confer the power to issue negotiable securities, and no necessary inference arises therefrom that such was the legislative intent. All of the provisions of the act relative to the registration of securities may be made applicable to nonnegotiable bonds, as well as to those that are in form negotiable, and, so far as we can divine, as much reason existed for requiring school districts to make an authentic record of their nonnegotiable indebtedness as for requiring a record of that which was negotiable. The act of February 27, 1873, is not rendered meaningless or nugatory, so far as school districts are concerned, by the assumption that the legislature did not intend to authorize school districts to issue negotiable securities. We are therefore constrained to hold that the bonds sued upon were issued without authority of law, and that no holder thereof could acquire the rights of an innocent purchaser of commercial paper. As this view disposes of the case, it is unnecessary to consider any of the other defenses to the bonds which the school district has interposed.

The judgment of the circuit court is accordingly affirmed.