Argued 19 April; decided 22 May, 1899.

## TOWN OF KLAMATH FALLS *v.* SACHS.

[57 Pac. 329.]

1. MUNICIPAL CORPORATIONS—RIGHT OF TRUSTEES TO ISSUE BONDS.—Where a municipality has power to issue bonds for a specific purpose, its board of trustees may issue such bonds without submitting the question of their issuance to a vote of the electors, unless the charter so requires. In such a case the municipality acts through the trustees, who are its agents, having the powers granted it by the legislature.

2. POWER OF MUNICIPALITY TO ISSUE NEGOTIABLE BONDS.—The power granted to a municipality to "issue bonds" for specific purposes implies the power to make such bonds negotiable in form and character, particularly where the charter elsewhere limits the indebtedness that may legally be incurred, and requires every warrant showing obligations beyond such limit to be so stamped across its face.

3. RECITALS IN BONDS AS AN ESTOPPEL—BONA FIDE HOLDERS.*—Recitals in municipal public improvement bonds that they were issued by virtue of a designated ordinance, giving its date and title, puts purchasers upon inquiry touching the provisions and the exact legal purposes of the ordinance, and whether it is sanctioned by the charter, and a recital that the bonds were issued in pursuance of the charter is not binding on the city, for the latter recital, being as to a matter of law, cannot act as an estoppel; but recitals in such bonds that all acts required as conditions precedent to their issue have been performed, will estop the municipality from asserting, as against innocent holders, that such conditions were not performed, as, that the improvements had not been completed, or that the work was not properly done.

---

*NOTE.—Municipal Bonds in the Hands of *Bona Fide* Holders is the title of a monograph on this subject generally in 51 Am. St. Rep. pp. 822–861.

See also *Culer* v. *Dwight School Tp.*, 28 L. R. A. 649.—REPORTER.

4. Construction of Municipal Ordinance.—A municipal ordinance grant-
ing a franchise for the construction of a water works system in a town,
and providing that on its completion the town shall deliver to the owner
bonds for a stated sum, and after he has operated the system for a stated
time the town shall have the right of purchasing it, in which case the bonds
delivered to the owner shall be applied as a part payment on the price, and
that in the meanwhile the town shall have an interest in the water works to
the extent of the bonds so delivered to the owner, which interest he cannot
alienate, is not invalid as providing for the delivery of the bonds to the con-
structor of the water works as a bonus.

5. Construction of Municipal Charter.—A clause of a municipal charter
limiting the indebtedness that may be lawfully incurred, and providing that
in addition thereto the town may issue bonds to a given amount for light
and water, is not a limitation on the cost of the water system.

6. Idem.—The board of trustees of a municipality is not required to provide for
lighting the town and at the same time furnish it with a water system by a
provision of its charter authorizing an indebtedness to be incurred "for the
purpose of lighting the town and furnishing it with a water system"—such
provision leaves it discretionary to provide either system or both.

(Headnotes by Wolverton, C. J.)

From Klamath :   Hiero K. Hanna, Judge.

This is a suit by the Town of Klamath Falls to enjoin
the prosecution of an action commenced by Lipman
Sachs against the plaintiff herein to recover upon two
coupons for interest payments upon two certain bonds
purporting to have been issued by it to H. V. Gates, to
restrain the collection of such coupons, and to have the
bonds themselves declared null and void.   The bonds to
which the coupons are attached are in form as follows :
"For value received, the Town of Klamath Falls, in the
County of Klamath, State of Oregon, promises to pay to
the bearer at the Chase National Bank, in the City of
New York, State of New York, on the first day of Sep-
tember, A. D. 1915, one thousand dollars, with interest
thereon at the rate of six per cent. per annum from Sep-
tember 1, A. D. 1895, interest to be paid semiannually
on the first days of September and March in each and
every year thereafter, at the same place, on the presen-
tation and surrender of the coupons for such interest,
hereto attached, as they respectively become due.   Prin-

cipal and interest payable in United States gold coin of the present standard of weight and fineness. This bond is one of a series of ten bonds of one thousand dollars each, of like tenor, and even date herewith, numbered consecutively from one to ten, both numbers inclusive, issued by the Town of Klamath Falls. This bond is issued by the Town of Klamath Falls for the purpose of providing electric lights and water for the inhabitants of said town by and under authority of an act of the legislature of the State of Oregon, filed in the office of the Secretary of State February 6, A. D. 1893, and entitled 'An act to incorporate the Town of Klamath Falls, Oregon,' * * * and by virtue of Ordinance No. 46 of said Town of Klamath Falls, duly passed by the board of trustees of said town on the sixth day of April, A. D. 1895 [giving the full title of the ordinance]. It is hereby recited that all acts and things required to be done precedent to and on the issuing of this bond have been done and performed in regular and due manner and form as required by law, and that the total indebtedness of said Town of Klamath Falls, including this issue of bonds, does not exceed the limit prescribed by law ; and for the prompt payment of the principal and interest hereof at maturity the full faith and credit of the said Town of Klamath Falls are hereby irrevocably pledged.'' They are duly executed, and bear date August 7, 1895. On April 6, 1895, the plaintiff's board of trustees adopted Ordinance No. 45, providing for supplying the town and its inhabitants with electric lights and power for public and private purposes, and granting H. V. Gates, his successors and assigns, a franchise and license to construct and operate a system of electric lighting and power works in the town, contracting with him for the rental of electric lights for illuminating the town, and reserving an option to purchase the same. Ordinance No. 46, adopted

at the same time, is similar in effect, except that it provides for the construction of a water system instead, and the issuance of the bonds in controversy. It is entitled "An ordinance providing for the supplying of the Town of Klamath Falls, Oregon, and its inhabitants, with water for public and private purposes, and granting H. V. Gates a franchise and license to construct and operate a system of water works in the Town of Klamath Falls, Oregon, contracting with the said H. V. Gates for the rental of fire hydrants for supplying the Town of Klamath Falls, Oregon, with water, and giving the Town of Klamath Falls, Oregon, an option to purchase said water works, and providing for payment to said H. V. Gates of ten thousand dollars in bonds of the Town of Klamath Falls as a first payment on said option to purchase the said water works and for rentals of hydrants for the Town of Klamath Falls, Oregon." It provides, in substance, so far as it is necessary to be set out for an understanding of the opinion, as follows :

"Sec. 1. That H. V. Gates, his successors and assigns, are granted the privilege for and during the term of ten years to construct, maintain and operate a system of water works in the Town of Klamath Falls, for supplying the said town and inhabitants thereof with water for public and private purposes."

"Sec. 4. That the grantee shall provide a substantial engine house, of sufficient capacity to accommodate pumps and appliances of water works, and such room as may be required to accommodate the electric plant to be operated in conjunction with said water works system."

"Sec. 6. That the grantee shall furnish and lay to the reservoir in the streets of said town, at a specified depth, not less than four thousand feet of six-inch pipe and two thousand feet of four-inch pipe, and as much more as may be deemed necessary ; shall furnish ten

double hydrants, and connect the same with the mains; also all necessary valves, special fittings, and valve boxes required to complete the works; the mains and fittings to be ample and capable of carrying out the provisions and intentions of this agreement, of affording the town where said pipes are laid first-class fire protection, and of sustaining a pressure of one hundred and fifty pounds to the square inch; shall furnish all mains and laterals that may from time to time be required to supply the town or its inhabitants with water; *provided*, that for each eight hundred feet of four inch, or larger, mains ordered by the town, there shall be one hydrant ordered, and rental paid for use of the same."

"Sec. 7. That the grantee is to keep the fire hydrants in good repair, protect same from freezing, and keep them ready at all times for instant service."

"Sec. 8. That the privilege granted to and vested in the said H. V. Gates, his successors and assigns, shall remain in full force and effect for and during the period of ten years, but subject to the right of purchase by the town; and the Town of Klamath Falls rents of the grantee, for the use designated, the ten hydrants mentioned and provided for during the same period of time from the acceptance of said water works."

"Sec. 10. That for and in consideration of the benefits secured to the Town of Klamath Falls by reason of the construction of the water plant and the use of the hydrants aforesaid, the Town of Klamath Falls covenants and agrees to issue to the grantee its bonds in the sum of ten thousand dollars, in denominations as demanded by the said grantee, said bonds to draw interest at the rate of six per cent. per annum, payable semiannually, and to be delivered to said grantee upon the completion of said water plant, and when the same has successfully stood the required tests; *provided*, the said

grantee shall satisfactorily show that said works are free from all liens, and that all labor and materials used and furnished have been paid for.''

''Sec. 11. That at the expiration of ten years from the completion of said works, and at the end of each five years thereafter, the Town of Klamath Falls shall have the option to purchase and own said water works and appurtenances and franchises upon the following conditions, and the grantee in accepting this ordinance expressly covenants to sell and convey to the town the said water works and system as a whole : The said Town of Klamath Falls, by resolution of its board of trustees, shall determine to purchase and own said water works and shall serve a certified copy of such resolution on the grantee at least six months before the time when the said town may exercise such option. The sum of money that said town shall pay for said water works as a whole shall be an amount which at eight per cent. interest would produce an annual income equal to the net income during the year previous to the serving of the notice of resolution, with the cost price added for any improvements or extension made during the year previous to such notice, upon which no revenue has been derived. When such purchase is made by the town, the franchise granted to Gates shall terminate. If said town shall not determine to purchase said water works within ten years from date of its acceptance of said works, it shall grant to the grantee a franchise, upon the same terms and conditions as herein stated, reserving the option of purchase each five years. The ten thousand dollars paid for hydrant rental shall be the first payment upon the purchase price of said water works, and it is agreed that, until such time as the town shall purchase, it shall own an absolute right and interest in the said water works and electric lights to be erected and operated

along with the water plant to the amount of ten thousand dollars; but it is further understood that until such time as the town shall purchase the interest of the grantee the grantee shall have exclusive use and control of said works in every particular, without paying to the town any rents, profits, or revenues therefrom or therefor in any manner whatever, except that the grantee shall not have the power or authority to sell, mortgage, lease, or in any way incumber the interest of the Town of Klamath Falls in said works.''

''Sec. 15. That, in the event it is necessary at any future time for the safety and welfare of the town to increase the capacity of wells, reservoirs or machinery, it shall be done by the grantee without any additional cost to the town, except in the purchase of said works, according to the conditions herein stated.''

''Sec. 16. That work shall be begun in a specified time, and the system completed within six months, unless delayed without fault of the grantee, and that on completion certain tests shall be made to the satisfaction of all parties.''

''Sec. 17. That it is understood and agreed that the grantee shall, before said water plant is accepted as complete, furnish satisfactory evidence that the combined electric and water plants have cost to exceed the sum of ten thousand dollars.''

''Sec. 19. That the ordinance shall become binding upon the town in the event that Gates shall accept its terms and conditions in writing within thirty days from its adoption.''

On July 12, 1895, the board of trustees enacted Ordinance No. 48, entitled ''An ordinance to amend section 10 of Ordinance No. 46,'' the purpose of which was to make the conditions contained in said Ordinance No. 46 touching the issuance of the bonds applicable to said

Ordinance No. 45 as well, and to require the electric light plant to be constructed and operated in conjunction with the water system.

The plaintiff alleges, among other things, that the bonds were issued in pursuance of Ordinance No. 46 alone, whereas the defendants show that they were issued in pursuance of the provisions of all the ordinances heretofore referred to,—Nos. 45, 46, and 48,—and further aver that, in view of the recitals contained in the bonds, the plaintiff ought not to be heard to say that neither Gates nor his successors in interest complied with any of the terms of said Ordinance No. 46 ; that the proposition to issue said bonds was never submitted to nor voted upon by the qualified electors of the town, or at all ; that said board of trustees was never authorized or empowered by the town to enact said ordinance, or to issue said bonds, and that the issuance of the said bonds was an attempt to create a debt or liability which, added to the other debts or liabilities of said town, would, in the aggregate, exceed the indebtedness or liability which the town could legally incur. The act incorporating the Town of Klamath Falls (Sess. Laws, 1893, p. 212, §§ 9, 11) provides, among other things, that the board of trustees shall have the power to "provide for lighting the streets, roads and alleys, and public buildings of the town, and furnishing the town with electric or other lights, and also to provide for the furnishing of water for said town, and to control the rates to be charged for said lights and water" (section 9, subd. 16) ; and section 11 limits the indebtedness to be incurred, in the following language, viz. : "The town shall never borrow money, contract debts, or loan its credit to a greater amount than five per cent. of the taxable property ; and all warrants drawn against the town creating an indebtedness in excess of that sum shall be absolutely void, and it shall be

so stated upon each and every warrant so drawn; *provided, however*, that for the purpose of lighting the town and furnishing it with a water system, the said town may incur an additional indebtedness of ten thousand dollars, and issue bonds therefor.''

There was a decree for the defendants, and plaintiffs appeal.                                    AFFIRMED.

For appellant there was an oral argument and a brief by *Mr. Austin S. Hammond*, to this effect:

Municipal corporations have no implied authority to issue negotiable bonds, and where there is express authority, it must be strictly followed: Simonton, Neg. Bonds, § 6; *Ironwood Water Works* v. *Trebilcock*, 45 Am. & Eng. Corp. Cas. 651; *Nolan* v. *State*, 36 Am. & Eng. Corp. Cas. 397; *City of Brenham* v. *German-American Bank*, 144 U. S. 173 (12 Sup. Ct. 559).

Authority to issue bonds as evidence of indebtedness does not authorize the issuance of negotiable bonds: Simonton, Neg. Bonds, § 28; *Police Jury* v. *Britton*, 82 U. S. 566; *City of Brenham* v. *German-American Bank*, 144 U. S. 173; *Ashuelot Nat. Bank* v. *School Dist.*, 56 Fed. 197, 5 C. C. A. 468; *Merrill* v. *Town of Monticello*, 138 U. S..673; *Barnum* v. *Okolona*, 148 U. S. 393; *Sage* v. *Board of Liquidation*, 144 U. S. 651.

Recitals upon the face of bonds are only binding as to such facts as the law has made it the duty of the board issuing the bonds to decide, and do not protect even an innocent purchaser as to questions of law, or as to facts which were a matter of record, or which he was bound to know; they have no effect where there was no authority to issue: 1 Dillon, Mun. Corp. 531, 546; Simonton, Neg. Bonds. § 45; *Dixon County* v. *Field*, 111 U. S. 83; *Hedges* v. *Dixon County*, 150 U. S. 183; *Barnett* v. *City of Denison*, 145 U. S. 135; *Nesbitt* v. *Independent Dist.*

*of Riverside* 144 U. S. 610 ; *Board of Com'rs* v. *Graham*, 130 U. S. 674 ; *Quaker City Nat. Bank* v. *Nolan County*, 59 Fed. 660 (45 Am. & Eng. Corp. Cas. 668); *Coffin* v. *Board of Com'rs*, 57 Fed. 137 (45 Am. & Eng. Corp Cas. 703); *Nat. Bank of Commerce* v. *Town of Grenada*, 54 Fed. 100 (40 Am. & Eng. Corp. Cas. 555); *Sutliff* v. *Board of Com'rs*, 147 U. S. 233 ; *Hayes* v. *Mayor of Holly Springs*, 114 U. S. 120 ; *Katzenberger* v. *City of Aberdeen*, 121 U. S. 30.

Where bonds recite that they are issued under the provisions of an ordinance referred to, the purchaser is bound by facts revealed by the ordinance : *Risley* v. *Howell*, 57 Fed. 544 ; *Barnett* v. *City of Dennison*, 145 U. S. 135 ; *Hackett* v. *City of Ottawa*, 99 U. S. 86.

The only exception to this rule is where the recitals undertake to set forth what the ordinance contains : *Hackett* v. *City of Ottawa*, 99 U. S. 86 ; *City of Evansville* v. *Dennett*, 161 U. S. 432.

The bonds in this case not only refer to Ordinance No. 46 as the authority for their issue, but they further recite the preamble of that ordinance in full, which itself reveals the fact that the ordinance is illegal and does not comply with the provisions of the charter.   See recitals in the bonds.

Municipal bonds issued without proper authority, are void everywhere, and no recitals in the bonds themselves will cure them : Simonton, Neg. Bonds, §§ 45, 125 ; *City of Brenham* v. *German-American Bank*, 144 U. S. 173 ; *Ashuelot Nat. Bank* v. *School Dist.*, 56 Fed. 197, and other cases cited herein.

It appears from the evidence that these bonds were issued for the purpose of loaning the credit of the Town of Klamath Falls to a private corporation, and are therefore void :   Constitution of Oregon, Article II, § 9.

For respondent there was a brief and an oral argument by *Mr. Chas. A. Cogswell.*

MR. CHIEF JUSTICE WOLVERTON, after making the foregoing statement of the facts, delivered the opinion of the court.

It is alleged that at the date of the signing and sealing of said bonds they were delivered to the defendant E. R. Reames (who was then a member of the board of trustees of the town, and a stockholder in the Klamath Falls Light & Water Company), in trust, to carry out the provisions of said Ordinance No. 46, and not otherwise; that neither Gates nor his assigns ever became entitled, under the provisions of said ordinance, to receive said bonds, and that the delivery thereof to Gates was unauthorized by any act of said board. At the trial, however, it was admitted in open court that they were delivered to him by Reames; that he sold the same, but failed to account to the town for the proceeds; and that the defendant Lipman Sachs purchased said interest warrants or coupons for a valuable consideration, before maturity, without knowledge of the conditions and circumstances under which they were issued, delivered, and negotiated, except such as he is bound to take cognizance of from the face of the bonds.

1. It is first insisted that the powers vested in the town by the charter must be distinguished from such as are vested in the board of trustees, and that in the one case they must be exercised by the inhabitants and in the other by the board. To illustrate: It is enacted that the "town may incur an additional indebtedness of ten thousand dollars and issue bonds therefor, for the purpose of lighting the town and furnishing it with a water system;" while, on the other hand, the board is authorized "to provide for lighting the streets, roads,

and alleys, and public buildings of the town, and furnishing the town with electric or other lights, and also to provide for the furnishing of water for the said town,'' etc. It is maintained that, as the inhabitants were incorporated as the town, they alone can exercise the power delegated by the former clause of the charter, while it is competent for the board to exercise such as is delegated by the latter. Reasoning from this hypothesis, it is urged that the board should have called an election, and submitted the question of the issuance of these bonds to a vote of the electors of the town. This concedes, for the present purpose, that the town is authorized to issue the bonds in question, but challenges the mode and manner of their issuance. The conclusion reached is hardly a logical deduction from the premises. The electors of the town do not comprehend all the inhabitants thereof, and just why the board of trustees should be required to submit the question to a vote of the electors because the inhabitants of the town are incorporated is not quite apparent. There is no authority or direction under the charter empowering or requiring the board, before proceeding to the issuance of the bonds, to submit the question to a vote of the people; nor is there any such a limitation put upon its powers as it respects the issuance thereof. It is very true the trustees, if they had seen fit, could have submitted the question to a vote of the electors as an advisory matter for their guidance, but they were not compelled or required to do so by any provision of the charter. They are the agents of the town in the exercise of all powers accorded it by the legislature, and the town acts through them in the transaction of all public business. A corporation, unlike an individual, cannot perform its functions directly, but must do so through an agent or some intermediary instrumentality; and it is in this capacity that the board of trus-

tees acted in the issuance of the bonds in controversy. If, therefore, the town has been clothed with the power to issue, the board has authority to proceed in the exercise thereof.

2.    It is next insisted that the language of the charter does not authorize or empower the town or its board of trustees to issue bonds negotiable in form and character, such as were attempted to be issued in the present instance ; in other words, that the power accorded to "issue bonds" is not commensurate or adequate to the purpose of issuing negotiable bonds.    It has been held that the implied power of a municipal corporation to borrow money to enable it to execute the powers expressly conferred upon it does not authorize the municipalty to issue negotiable securities, capable of being sold in open market, and thereby freed from equities that might be set up by the maker ; and, further, that the power to borrow money on the credit of the municipality for general municipal purposes limits the power to borrow for ordinary governmental purposes, such as are generally carried out with revenues derived from taxation, the presumption being that the grant of power was intended to confer the right to borrow money in anticipation of the receipt of revenue taxes, and that there is no implied power to issue negotiable securities, unimpeachable in the hands of innocent purchasers, for the money borrowed :    *Merrill* v. *Town of Monticello*, 138 U. S. 673 (11 Sup. Ct. 441) ;    *City of Brenham* v. *German-American Bank*, 144 U. S. 173 (12 Sup. Ct. 559).    So, in *Ashuelot Nat. Bank* v. *School Dist. No. 7, Valley County*, 5 C. C. A. 468, 56 Fed. 197, it was held that there is no implied power to issue negotiable bonds from the express delegation of power and authority to borrow money to pay for the site of school houses, to erect buildings

35 OR.—22.

thereon, and furnish the same, dependent upon a majority vote of the qualified electors of the district, And, in *Merrill* v. *Town of Monticello*, 138 U. S. 673 (11 Sup. Ct. 441), it is said by Mr. Justice LAMAR, speaking for the court, that : "To borrow money, and to give a bond or obligation therefor, which may be circulated in the market as a negotiable security, freed from any equities that may be set up by the maker of it, are, in their nature and in their legal effect, essentially different transactions. In the present case all that can be contended for is that the town had the power to contract a loan under certain specific restrictions and limitations. Nowhere in the statute is there any express power given to issue negotiable bonds as evidence of such loans. Nor can such power be implied, because the existence of it is not necessary to carry out any of the purposes of the municipality." These cases are mainly relied on by plaintiff in support of its position, and we do not question their soundness, but their application to the present controversy may well be doubted.

In *City of Cadillac* v. *Woonsocket Inst. for Savings*, 7 C. C. A. 574, 58 Fed. 935, under a statute which contains, among others, the following provisions, viz. : "For any loans lawfully made the bonds of the city may be issued, bearing a legal rate of interest. * * * When deemed necessary by the council to extend the time of payment, new bonds may be issued in the place of former bonds falling due, in such manner as merely to change but not increase the indebtedness of the city,"—it was held that bonds negotiable in form were authorized. LURTON, J., speaking for the Circuit Court of Appeals, says : "That this contemplates, and by necessary implication authorizes, the issue of negotiable bonds, we have no doubt. The general power to issue 'bonds' must be taken to authorize 'bonds' in the usual form of such well-known

commercial obligations. That usual form embodies a
contract and obligation negotiable in its terms." He
continues: "The case of *City of Brenham* v. *German-
American Bank*, 144 U. S. 173 (12 Sup. Ct. 559), has no
bearing upon this question. Nothing more is there de-
cided than that an act empowering the city to borrow,
for general purposes, not exceeding $15,000, on the credit
of the city, did not authorize the issuance of negotiable
obligations for the money so borrowed. Here the power
to issue obligations, by necessary implication, in the
usual commercial form of 'bonds,' is expressly given.
But one meaning can be fairly deduced from the terms
of the act. The question now presented was not dis-
cussed in the *Brenham Case*, and we have no doubt what-
ever as to the conclusion we have announced." The
doctrine of this case has been expressly followed in sev-
eral subsequent decisions by the federal courts, all of
which distinguish *Merrill* v. *Town of Monticello*, 138 U. S.
673 (11 Sup. Ct. 441), and *City of Brenham* v. *German-
American Bank*, 144 U. S. 173 (12 Sup. Ct. 559). In
*Ashley* v. *Board of Supervisors*, 8 C. C. A. 455, 60 Fed. 55,
power was given to issue bonds bearing interest, running
for a long period of time; and, it appearing on the face
of the act that they might be put on the market and sold,
it was held that, by strong implication, bonds negotiable
in form were intended to be and might lawfully be issued
and sold, under the authority granted. In *West Plains
Tp.* v. *Sage*, 16 C. C. A. 553, 69 Fed. 943, it was held
that a statute providing "that every county, every city
of the first, second and third class, the board of educa-
tion of any city, every township, and every school dis-
trict, is hereby authorized and empowered to compromise
and refund its matured and maturing indebtedness of
every kind and description whatsoever, upon such terms
as can be agreed upon, and to issue new bonds, with

semi-annual interest coupons attached, in payment for
any sums so compromised,'' by implication authorized
the township to issue new bonds, without any restriction
as to their negotiability, and that the grant of power to
a municipal body to issue bonds must be interpreted to
give that body power to issue municipal bonds in the
usual form of such securities. And in *Howard* v. *Kiowa
County*, 73 Fed. 406, it was concluded that statutory
power to issue bonds includes power to make them ne-
gotiable, unless restricted by positive enactment. The
learned judge in this case cites with approval the federal
authorities above referred to.

The implied power is largely—perhaps exclusively—a
matter of legislative intendment, and we are impressed
that a reasonable construction of the charter providing
for the issuing of these bonds empowers the town, through
its board of trustees, to issue and put upon the market
bonds negotiable in form, and which would not be sub-
ject to equities in favor of the town in the hands of inno-
cent purchasers. It will be noted that the first clause of
section 11 of the charter provides that the town shall
never borrow money, contract debts, or loan its credit to a
greater amount than five per cent. of its taxable property,
and that all warrants drawn against the town creating
an indebtedness in excess of that sum shall be absolutely
void, and it shall be so stated upon each and every war-
rant so drawn. Thus it will be seen that the intendment
of the charter is that the ordinary warrants may be issued
in liquidation of the town's indebtedness, within the limit
designated ; but, if it exceeds the limit, then that the
warrants shall be invalid, and the fact shall be indicated
upon the face thereof, which would impart direct notice
and information of their illegality to every person deal-
ing with them. A subsequent clause empowers the town
to issue another and a different kind of voucher or obli-

gation "for the purpose of lighting the town and fur-
nishing it with a water system." For the additional
indebtedness thus incurred it may "issue bonds." Mani-
festly, a distinction was intended to be made between
the two kinds of vouchers or obligations, and it was
designed, no doubt, that one should possess more of
value to the holder than the other, else why should the
different kinds of obligations be designated in the self-
same section of the charter? Now, a non-negotiable
bond is no more serviceable to the holder than the ordi-
nary warrant, the usual voucher issued in liquidation of
ordinary expenditures of the municipality; and, if we
would endow it with an enlarged value, the only manner
by which it could be done is to give it negotiability, so
as to impart to it the quality of commercial paper, and
thereby cut off equities in the hands of innocent holders
for value; so that, if we must make a distinction, it
must be that which distinguishes the ordinary warrant,
or non-negotiable, from the negotiable municipal bond,
which cuts off equities. We conclude, therefore, that
the bonds authorized by the charter are those possessing
the greater commercial value, issued in the usual com-
mercial form, with protection to innocent purchasers.
THAYER, J., who rendered the opinion in *Ashuelot Nat.
Bank* v. *School Dist. No. 7, Valley County*, 5 C. C. A. 468,
56 Fed. 197, wrote a concurring opinion in *West Plains
Tp.* v. *Sage*, 16 C. C. A. 553, 69 Fed. 943, basing the
power to issue the negotiable form and quality of bonds
upon a construction of the statute, wherein, considering
the intent of the legislature, he concluded that the lan-
guage of the act was adequate to the purpose, notwith-
standing the decisions in *Merrill* v. *Town of Monticello*,
138 U. S. 673 (11 Sup. Ct. 441), and *Brenham* v. *German-
American Bank*, 144 U. S. 173 (12 Sup. Ct. 539). To the
same purpose is *Ashley* v. *Board of Supervisors*, 8 C. C. A.

455, 60 Fed. 55. So it is in the case at bar. The character of the bonds authorized to be issued is established by legislative intendment, and it was competent to give them the quality of negotiability.

3. The bonds having recited that they were issued in pursuance of the provisions of the charter and Ordinance No. 46, it is vigorously contended that the purchaser is bound to take cognizance of the provisions both of the charter and the ordinance, and, in that view, it is further maintained that the ordinance is such as the board of trustees had no warrant, under the charter, to adopt, in that it does not provide for lighting the town and furnishing it with a water system; hence, that the bonds were issued for a purpose not contemplated by the charter, and therefore void in the hands of all holders thereof. Answering these propositions, defendants assert that, the charter having invested the board of trustees with power to issue bonds, and the bonds themselves bearing upon their face recitals to the effect that they were issued by authority of the charter and Ordinance No. 46, and that all acts and things required to be done precedent to and on the issuance thereof have been done and performed in regular and due manner and form, as required by law, the town is effectually estopped to controvert the truth of such recitals as against a *bona fide* holder. In legal effect, adequate recitals contained in negotiable municipal bonds are equivalent to a representation, or warranty, or certificate on the part of the officers, that everything necessary by law to be done has been done, and every fact necessary by law to have existed did exist, to make them legal and binding. It is well understood, of course, that such recitals do not cover matters of law, as all parties are equally bound to know the law, so that a certificate reciting actual facts, and that thereby the bonds were conformable to law, when, judicially speaking, they

are not, does not work an estoppel upon the municipality to claim the protection of the law ; otherwise, it would be in the power of every municipal body, whether it had the authority or not, to usurp it by declaring that its assumption was within the law.  This would be an exercise of legislative power, and would put corporate bodies above the law itself.  The estoppel, therefore, extends only to matters of fact, and the statement thereof must be qualified and circumscribed so as to comprise such only as the officers intrusted with the power of issuing the bonds have express or implied authority to ascertain and determine touching their existence.  In such a case, Mr. Justice MATTHEWS, in *Dixon County* v. *Field,* 111 U. S. 83 (4 Sup. Ct. 315), says :  "The meaning of the law granting power to issue bonds is that they may be issued, not upon the existence of certain facts, to be ascertained or determined whenever disputed, but upon the ascertainment and determination of their existence by the officers or body designated by law to issue the bonds upon such a contingency."

The gist of the rule is aptly stated by Mr. Justice STRONG, in *Town of Coloma* v. *Eaves,* 92 U. S. 484, as follows :  "Where it may be gathered from the legislative enactment that the officers of the municipality were invested with the power to decide whether the condition precedent had been complied with, their recital that it has been, made in the bonds issued by them, and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality ; for the recital is itself a decision of the fact by the appointed tribunal."  Hence it may be stated, as a general rule, that recitals in bonds which functionaries of a municipality have been empowered to issue, respecting the existence of specified facts, and the performance of the requisite conditions which are within their appropriate functions or province to

ascertain and determine, will estop the municipality to assert or maintain anything to the contrary as against the claim of innocent holders. We have little doubt but that the statement on the face of the bonds that they were issued by virtue of Ordinance No. 46, giving the date and the full title of such ordinance, is such an apposite and significant reference thereto as to put persons dealing in them upon inquiry touching the provisions and exact legal purpose of the ordinance, and whether it was such an one as had the sanction of the charter in its enactment. The trend of authority, so far as we have been able to discover, is to that effect: *Risley* v. *Village of Howell,* 57 Fed. 544; *Hackett* v. *Ottawa,* 99 U. S. 86; *Barnett* v. *City of Denison,* 145 U. S. 135 (12 Sup. Ct. 819). Such being the legal effect of the statement or reference to the ordinance, the recital that the bonds were issued in pursuance of the charter could not validate it, or give it effect, if void or inoperative. This would be equivalent to saying: "Indeed, you have given us the true condition of the ordinance, and it is such that the town had no authority to adopt; but, nevertheless, you assert upon the face of the bonds that all was done in pursuance of the charter, hence that we are at liberty to assume, in utter disregard of the truth, that an ordinance was not only adopted, but that, in legal contemplation, it was amply sufficient to authorize and support the bonds, and that we may therefore purchase in absolute reliance on their validity." That would be an anomaly, and would result in making a void ordinance, of the condition of which all parties have had ample notice, valid, by the simple assertion that it was adopted in accordance with law.

4. This brings us to a consideration of the ordinance itself, and we are to determine whether it is such an one as the board of trustees was empowered to adopt, and such

as will support the bond issue.   It is urged that the bonds
awarded are, in effect, a bonus to be paid to Gates for con-
structing the water system and supplying the town with
water.   A careful analysis of the ordinance will suffice
to determine this question.   In the first place, the town
grants to Gates, his successors or assigns, a privilege to
construct and maintain a system of water works for sup-
plying it and its inhabitants with water.   Primarily, this
privilege is limited to ten years.   Gates, by an accept-
ance of the ordinance, agrees and undertakes to build,
construct and maintain the system in accordance with
particular provisions of the ordinance, and is required to
maintain it during the full period for which the privilege
is granted.   Thereupon it is provided that the town shall
have the option to purchase the system at a certain fixed
rate, capable of being definitely determined at any time
it may desire to conclude the purchase.   In considera-
tion of the option, it is stipulated that the town shall
execute and deliver to Gates its bonds for the sum of
$10,000, and, whenever it shall conclude the purchase,
these bonds are to be considered a first payment upon
the purchase price.   The ordinance provides that the
town shall have an interest in the water works to the
extent of $10,000, but that Gates and his successors and
assigns shall also retain an interest therein until the
town has completed the purchase, upon the consumma-
tion of which the franchise shall terminate.   Gates is
to receive the rents and profits of the water service to
the inhabitants, and even to the town, except for ten
hydrants, which he is required to furnish and maintain
in part consideration for the franchise until the same
is terminated ; and provision is made for the renewal
of the franchise, which contemplates as well a renewal
of the option from time to time for a period of five years,
so that the parties shall be continued in practically the

same relations.   These are, in brief, the principal characteristics of the ordinance, which became effective as a contract when accepted by the grantee in the manner indicated.   Whatever might be said of the ordinance, it does not provide for a bonus to Gates, in the sense that it is a mere gratuity, as he has contracted for and has given something of value to the town in return for the bonds and his limited franchise.

5.   But the cardinal inquiry is whether what has been done has culminated in furnishing the town with a water system, within the meaning of section 11 of the charter. It is argued that it was the purpose and intent of the charter that the town should be or become the absolute owner of a perfect water system, freed from all liens, or incumbrances which may have effect as such, either directly or indirectly ;   in other words, that the town is empowered merely to purchase and own a perfect, unincumbered water system, at a cost not to exceed $10,000. The effect of section 11 is that the town shall not create an indebtedness exceeding five per cent. of the taxable property ;   but, for the purpose of lighting the town and furnishing it with a water system, it is authorized to incur an additional indebtedness of $10,000, which latter amount we interpret not to constitute a limitation upon the cost of the water system ;   and it would be adequate for the town to contract or provide for the construction of a system which might cost a sum equal to five per cent. of the taxable property in excess thereof, provided there was no other indebtedness of the town, and it could issue therefor $10,000 in bonds, and its warrants for the balance.   Thus far the way seems perfectly clear.   It must be admitted that the town has not become the absolute owner of the water system ;   but it has an interest therein to the extent of $10,000, and, under the ordinance, it may retain this at all events, and may even-

tually become the owner of the whole by a supposed additional expenditure. We find from the testimony that the entire system, including the electric light plant, cost Gates something like $17,000. But this is not the measure of the ultimate cost to the town. It may be more, and yet it may be less. The assessments of taxable property in 1895 exceeded $125,000, so that, if the board had incurred a liability or obligation to the full amount of the cost to Gates, it would exceed but slightly the limitation under the charter unless the town had other outstanding obligations. The board, however, has only incurred a present obligation of $10,000, and at the end of ten years it is quite probable it can assume the additional obligation, if it does not provide a fund in the meantime for the payment of the bonds in full or in part, without overreaching the charter limitation of indebtedness. Careful provisions are made whereby the town may eventually own the system, and it would seem that the legitimate intendment of the ordinance is that the contract thereby consummated with the assent of Gates should, in good faith, be carried out in every detail, and fully and conscientiously executed. The ordinance has so provided that neither Gates nor his successors or assigns can ever acquire the absolute franchise without the assent of the town (and without the franchise they could not operate the system); nor can the town be deprived of its right to finally acquire the entire ownership of the system without an abandonment thereof. The town entered *bona fide* into a contract, and we cannot say that it is unreasonable or unbusinesslike, for that is largely a legislative matter for the board of trustees, whereby, upon the observance of its terms and conditions, it might eventually acquire the water system, and, apparently, without the necessity of exceeding the limit of indebtedness as set by the charter; and we are very

strongly impressed that it is such an one as the board had the power to make, looking to the acquirement of the water system, and, while it is yet executory in its nature, and the town has not become the absolute owner, such is the legitimate intendment that it shall at a future date become such owner; hence, we hold that it has not exceeded its powers in the premises.

6.   We have reasoned this case so far as if the board of trustees had been dealing with the water system alone, because it has seemed that we might be better understood.   The plaintiff argued that it was necessary, under the charter, that the board should provide for lighting the town, and at the same time furnish it with a water system, thus combining the two, and that it was incompetent for the town to provide for the one without the other.   This argument is not well founded, as it is apparent that the intendment of the charter is that the board might provide for one or the other separately, or for both at the same time; but, if we are wrong in this interpretation, we find that the board has in fact undertaken to provide for a combination of both.   While the ordinance providing for the lighting of the town is not referred to in the bonds, yet the matter of constructing an electric system in conjunction with the water works is referred to in Ordinance No. 46 in such manner as it may be fairly concluded that the purpose of the board was to furnish the town with a system for lighting, as well as for a water supply.   Ordinance No. 46 being, as we have heretofore ascertained, within the power of the board of trustees to enact, the town is estopped by the recital in the bonds to the effect that all acts and things required to be done precedent to and on the issuance thereof have been done and performed in regular and due manner and form, as required by law, to deny that Gates

or his assigns have not complied with the terms and conditions of his undertaking, or that he has not fully completed the system, as required by the ordinance. .

The issue is raised that the bonds were delivered without the authority of the board of trustees. But touching this there is no evidence in the record showing the manner of their delivery by Reames. The complaint alleges no fraud in the delivery, but simply that the bonds were turned over to Gates contrary to the conditions of the ordinance. But the burden of proof regarding this matter was with the plaintiff to establish, and, not having done so, we must conclude that the fact is otherwise than as alleged, and that the bonds came rightfully into the hands of Gates. These considerations affirm the decree of the court below, and it is so ordered.

AFFIRMED.